**James C. DENT, Plaintiff,**

v.

**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY et al., Defendants,**

**Equal Employment Opportunity Commission, Intervenor.**

**Civ. A. No. 66–65.**

United States District Court
N. D. Alabama, S. D.
March 10, 1967.

Oscar W. Adams, Jr., Birmingham, Ala., and Jack Greenberg and Leroy Clark, New York City, for plaintiff.

Nicholas deB. Katzenbach, Atty. Gen., St. John Barrett, John Doar, Asst. Attys. Gen., and Charles T. Duncan, Gen. Counsel, EEOC, Washington, D. C., and Macon L. Weaver, U. S. Atty., Birmingham, Ala., for intervening plaintiff.

Mulholland, Hickey & Lyman, Toledo, Ohio, and Jerome A. Cooper, of Cooper, Mitch, Johnston & Crawford, Birmingham, Ala., for defendants, St. Louis-San Francisco Ry. Co., Carmen, and Local 60.

Drayton T. Scott, William F. Gardner and Paul R. Moody, of Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., for defendant St. Louis-San Francisco Ry. Co.

## OPINION

LYNNE, Chief Judge.

Invoking the provisions of Title VII of the Civil Rights Act of 1964,[1] the plaintiff has brought this action against his employer and his collective bargaining representative alleging racial discrimination in terms and conditions of employment against himself and the class wihch he claims to represent in this suit.

By Motions to dismiss, the jurisdiction of the court and the plaintiff's right to maintain the action in its present posture have been brought into question. The Equal Employment Opportunity Commission in turn responded with its petition to intervene for the purpose of presenting its views regarding the questions raised by the motions. The court granted its petition and has welcomed the benefit of its views.

One of the questions before the court concerns the necessity of the plaintiff first pursuing remedies available under the collective bargaining agreement or before the National Railroad Adjustment Board. The court agrees with the

---

1. 42 U.S.C. §§ 2000e et seq. The provisions governing the procedure before the Equal Employment Opportunity Commis-sion and in the courts are set forth in section 706 of the Act and will be referred to by such section in this opinion.

position, taken by the plaintiff and the Commission, that the principle of Republic Steel Corp. v. Maddox[2] should not be applied to actions brought under Title VII of the Act and therefore holds that remedies under the collective bargaining agreement or before the Adjustment Board need not be pursued prior to the institution of an action under this title.[3]

A second question before the court is whether the suit was timely filed. Pointing to the fact that section 706 provides a 60 day period for the investigation and conciliation functions of the Commission and a 30 day period for the filing of suit, the defendants have argued that this establishes a period of 90 days from the filing of the charge within which suit must be instituted in order to be timely. However, the court agrees with the plaintiff and the Commission that the 60 day time period provided for the investigation and conciliation of charges is properly to be accorded a directory rather than a mandatory construction and that the Commission is not required to undertake conciliation of charges within the 60 day period in order for a civil action based on the charge to be timely filed thereafter.

There remains the fact that this action, as well as several similar suits under Title VII pending in this court,[4] were instituted without there having been any conciliation efforts by the Commission, either within or beyond the 60 day period. The court is therefore faced with the critical issue as to whether it is a prerequisite to the institution of a civil action under Title VII that there be compliance by the Commission with the direction of section 706(a) that it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."

The court has devoted the most careful and studied consideration to the resolution of this issue. It has in this study had the benefit of complete and exhaustive briefs, both original and supplemental; the issue has been argued orally as well, and the court has independently researched all available pertinent material. Having done so, the court is firmly of the opinion that conciliation was intended by Congress to be and is a jurisdictional prerequisite to the institution of a civil action under Title VII and that the actions instituted without this prerequisite must accordingly be dismissed.

I.

This is the only result which could be reached consistent with the congressional intent, for the legislative history establishes conclusively and beyond doubt that Congress intended that conciliation be preferred to coercion and that the conciliation step would be a prerequisite to the institution of a civil action under this title.

From the outset and continuously throughout the legislative process which produced this statute, emphasis was placed on the conciliation step and on the fact that enforcement proceedings would not be initiated without an effort having been made to resolve the matter through conciliation.

At an early day in this legislative history, the Report of the House Education and Labor Committee on the bill

2.  379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

3.  Compare McKinney v. Missouri Kansas Texas Railroad Co., 357 U.S. 265, 78 S. Ct. 1222, 2 L.Ed.2d 1305 (1958).

4.  The other Title VII suits pending in this court which were instituted without conciliation having been undertaken are as follows:

C.A. No. 66–206–S, Muldrow, et al v. H. K. Porter Co., Inc.;

C.A. No. 66–315–S, Pettway, et al v. American Cast Iron Pipe Co.;

C.A. No. 66–320–S, Pearson, et al v. Alabama By-Products Corp., et al;

C.A. No. 66–402–S, Reese v. Pullman, Inc., et al;

C.A. No. 66–641–NW, Hyler, et al v. Reynolds Metal Co., et al.

providing for adjudication by the Commission stated that "It is the intent of the Committee that maximum efforts be concentrated on informal and voluntary methods of eliminating unlawful employment practices before commencing formal procedures" and that "Formal proceedings leading toward an order of the Commission should be pursued only when informal methods fail or appear futile." [5]

The bill reported by the House Judiciary Committee, providing for adjudication by the district courts, was explained in equally emphatic terms as requiring conciliation before the institution of the civil action.[6]

Moreover, while the bill originally contained a clause which would have permitted the institution of a civil action "in advance" of conciliation,[7] this clause was eliminated from the bill through amendment in the House for the express purpose of insuring that civil actions would not be brought until there had been conciliation.[8]

The explanations for the deletion of the "in advance thereof" clause can permit of no question concerning this intent. The amendment to delete the clause was offered by Representative Celler, who not only introduced the bill but was Chairman of the Judiciary Committee which reported it as well, and he explained that "the language is stricken out to make certain that there will be a resort by the Commission to conciliatory efforts before it resorts to a court for enforcement." [9]

## II.

It is conceded, as necessarily it must be, that "the effect of deleting the clause was to make Commission-initiated conciliation a condition precedent to the Commission's right to bring suit." [10] Instead, the court is asked to distinguish this chapter of the legislative history on the theory that the Dirksen compromise measure,[11] in substituting the "person aggrieved" for the Commission as the party authorized to bring the civil action, eliminated the conciliation step as a prerequisite to the institution of the action.

The court cannot agree, for the adoption of this argument would be entirely contrary to logic and to the legislative intent regarding the procedure under the Dirksen compromise.

This measure was not only a compromise in terms and effect but was as well described as "a further softening of the enforcement provisions of Title VII" [12] and as placing "greater emphasis * * * on arbitration and voluntary compliance than there was in the House bill." [13] It would therefore be most anomalous and contrary to logic to construe this measure as permitting the institution of a civil action without conciliation and thus as providing less protection to potential defendants and as placing less emphasis on voluntary compliance than did the House bill.

Such a construction would require an equally patent disregard for the fact that the procedure under the compromise was explained, just as was the House bill,

---

5. House Report No. 570 on H.R. 405, 88th Cong., 1st Sess. (1963).

6. For example: "The procedures are carefully spelled out * * *. Those procedures are designed to give due protection to everyone. They command that there first be voluntary procedures." '110 Cong. Record 1638 (February 1, 1964).

7. The bill as reported to the House provided that the Commission should bring the civil action if it had not eliminated the unlawful employment practice through conciliation "or in advance thereof if circumstances warrant." H.R. 7152, 88th Cong., 1st Sess.

8. 110 Cong.Record 2567.

9. 110 Cong.Record 2566 (February 8, 1964). This was reiterated by another congressman as follows: "We thought that the striking out of the language would make it clear that an attempt would have to be made to conciliate in accordance with the language * * * before an action could be brought in the district court." 110 Cong.Record 2566.

10. Original brief for plaintiff at pp. 4–5.

11. 110 Cong.Record 11936 (May 26, 1964).

12. 110 Cong.Record 12595 (June 3, 1964).

13. 110 Cong.Record 15876 (July 2, 1964).

as authorizing the institution of the civil action only after conciliatory efforts by the Commission.

This intent was once again emphasized. For example, it was explained that by the conciliation step, "we have leaned over backward in seeking to protect the possible defendants",[14] that "If efforts to secure voluntary compliance fail, the person complaining of discrimination may seek relief in a federal district court",[15] and that "The point of view of this section is to permit one who believes he has a valid complaint to have it studied by the Commission and settled through conciliation if possible. The court procedure can follow." [16]

It was further explained in a similar vein that "If the procedures before the Commission are unsuccessful the complainant may seek relief in the federal courts", that "Section 706(e) provides for suit by the person aggrieved after conciliation has failed", that "those of us who have worked upon the substitute package have sought to simplify the administration of the bill * * * in terms of seeking a solution by mediation of disputes, rather than forcing every case before the Commission or into a court of law", and that "We have placed emphasis on voluntary conciliation—not coercion." [17]

To incorporate all the expressions of legislative intent which the court has reviewed would unduly extend this opinion. It is enough to say that this sampling provides ample illustration of the unmistakable congressional intent that conciliation efforts would be a prerequisite to the institution of a civil action and, by so doing, to achieve the ends of protecting charged parties against being brought into court without the opportunity to resolve the matter through conciliation and of promoting voluntary compliance in perference to coercion. To hold otherwise would be to sterilize and disregard the clear intent of the Congress which enacted this statute.[18]

### III.

The plaintiff and the Commission have urged the view that the bypassing of the conciliation step should be disregarded because "the EEOC received a large number of complaints which made excessive demands upon its small staff." [19]

The court cannot accept the view that a statutory requirement may be disregarded because of the caseload of an administrative agency. As the Court of Appeals for this circuit recently said of the due process requirement, "administrative convenience or necessity cannot override this requirement." [20]

---

14. Senator Morse at 110 Cong.Record 14190 (June 17, 1964).

15. Senator Muskie at 110 Cong.Record 12617 (June 3, 1964).

16. Senator Saltonstall at 110 Cong.Record 14191 (June 17, 1964).

17. Senator Humphrey at 110 Cong.Record 12708–12709, 12723, 13088, 14443 (June 4–9, 1964).

It should be added that it would be most unrealistic to take the inconsistent comments by Senators Humphrey and Javits at 110 Cong.Record 14188 and 14191 as an accurate reflection of the legislative intent, both because they were addressed to the situation where the Commission finds no reasonable cause and hence has no occasion to undertake conciliation and because they can hardly detract from the force of the expressions of the legislative intent re-

garding conciliation as a prerequisite to suit where there is a finding of reasonable cause. It may further be noted that the plaintiff has characterized one of these inconsistent remarks as "Senator Humphrey's discredited statement * *." (Original brief for plaintiff, p. 6.)

18. Compare Michael I. Sovern, Legal Restraints on Racial Discrimination in Employment (1966) at p. 82: "That the structure of section 706, with its linkage of the individual suit to Commission conciliation, leads naturally to the conclusion that a complainant cannot sue until the Commission takes the steps specified could not have been lost on Congress, for the bill's opponents made much of this."

19. Commission's pleading in intervention, p. 3.

20. Russell-Newman Mfg. Co. v. NLRB, 370 F.2d 980 (5th Cir. Dec. 27, 1966).

Moreover, the arguments which the plaintiff and the Commission have presented with respect to the timely filing of the suit, and which the court has agreed with, provide the answer to their argument regarding the Commission's caseload as an excuse for bypassing conciliation. The court agrees with the Commission's view, addressed to the time periods provided by the Act, that "The public interest would be seriously prejudiced if the EEOC terminated all investigations of and efforts to conciliate unfair employment practices within 60 days of the receipt of charges," [21] and consistent with the intent of the statute and this public interest consideration, it was the Commission's obligation to have undertaken conciliation before this suit was filed, whether within or beyond the 60 day period.

The court should further point out that during the pendency of this case, the Commission amended its procedural rules both to free the conciliation step from the limitations of the 60 day time period [22] and, even more to the point of this case, to provide that the notice to the charging party advising him that he may file the civil action will not be issued "prior to efforts at conciliation with respondent." [23]

Accordingly, the Commission has by administrative construction now adopted the procedure which is consistent with the intent of the statute and which should have been followed with respect to this case.

It is of further relevance to this case that the position that the civil action is not to be brought until after con- ciliation has not only been adopted by the Commission through amendment of its procedural rules but has as well been accepted informally as the proper interpretation by its legal office. [24]

Section 706(e) provides that if " * * the Commission has been unable to obtain voluntary compliance with this title, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge." To read this clear language by interpolating after "unable" the phrase "because of its caseload," as plaintiff and intervenor have urged at oral arguments and on briefs would be the grossest distortion. For the purpose of this opinion it is sufficient to observe that absent some effort or attempt to obtain voluntary compliance, however minimal, it cannot be said realistically that the Commission has been unable to do so.

### IV.

The court has also been urged by the plaintiff and the Commission to overlook the defect in this case by resort to section 706(e) which provides for a stay of proceedings "for not more than sixty days pending the termination of * * * the efforts of the Commission to obtain voluntary compliance."

This argument has a certain appeal from the practical standpoint, but it cannot cure the fact that the action was brought without there having been any attempted conciliation whatsoever.

In the first place, it would strain the stay clause beyond its reasonable limits to apply it to a case brought before

21. Commission's pleading in intervention, p. 4.

22. While the Commission's procedural rules formerly provided that it would undertake conciliation "within the limitations of time set forth in section 706(e) of the Act" (29 C.F.R. § 1601.21), this has now been deleted (31 Fed.Reg. 10269–10270; July 29. 1966) so that its rules now provide that it "shall endeavor to eliminate such practice by informal methods of conference, conciliation and persuasion" without the limitations of the time period.

23. 31 Fed.Reg. 14255 (Nov. 4, 1966).

24. The plaintiff has attached to his brief, as authority applicable to the time periods of the Act, a copy of a letter from the office of the Commission's General Counsel stating that "it is the intent of the statute to require the aggrieved person to delay his suit until the Commission has exercised its function of conciliation * * *."

there has been any conciliation effort at all. It not only speaks of "the termination" of conciliation but was likewise explained in Congress as authorizing a stay pending "further efforts at conciliation by the Commission," [25] and it therefore is to authorize a stay for the termination or continuation of conciliation efforts, not for their initiation.

In the second place, it is not necessary to go beyond the Act itself to demonstrate that Congress was well aware of the way to provide for the institution of a civil action and then for a stay for the initiation of conciliation when this was the intended procedure. This is the procedure established by section 204 for suits under Title II of the Act, and the court cannot disregard the fact that a different procedure was established for actions under Title VII.

In the third place, it is of even more fundamental importance that "Federal jurisdiction depends on the facts at the time suit is commenced, and subsequent changes neither confer nor devest it." [26] It would be entirely impermissible to cure jurisdictional defects by ex post facto action, and the court will not do so in this case.

This principle has a particularly compelling application here, for it was one of the purposes of the conciliation step to provide "due protection" to parties against whom charges are filed, and protection which comes too late is no protection at all.

### V.

While the congressional intent is conclusive without more, it should further be said in the interest of complete analysis that the court does not read District Judge Gray's decision in Hall v. Werthan Bag Co., 251 F.Supp. 184 (M.D. Tenn.1966) as authority for the proposition that conciliation may be bypassed. Rather the court believes that case is in agreement that conciliation is a prerequisite to a civil action.

The holding of the case allowed the intervention of another employee with respect to the plaintiff's allegations of discrimination in training, wages, and transfers, the court reasoning that these matters had been the subject of conciliation and that it was not necessary to conciliate again on these matters common to all the Negro employees. At the same time, the court further held that matters which were personal to the intervening employee and which had not been the subject of conciliation would not be heard in the case, "for the Commission has not attempted conciliation in regard to rectifying any alleged injuries which other Negro employees or would-be employees may claim to have suffered as a result of the defendant's alleged discrimination." [27]

### VI.

While much has been said in argument to the court regarding considerations of fairness to the plaintiffs, it has never been the function of the courts to disregard statutory requirements on the basis of which side can present the most moving emotional argument.

Moreover, the claims of unfairness rest upon surface appearances belied by the actual facts. The plaintiff is not being deprived of his day in court, for he will be entitled to proceed with a civil action once the prerequisite of conciliation has been satisfied, if, indeed, conciliation should not resolve the dispute. Furthermore, Congress did not lose sight of the unfairness which would result to parties against whom charges are filed if they could be brought into court without the conciliation step, and the courts certainly should not lose sight of this fact.

Even so, this is to some extent a hard case from the standpoint of the plaintiff, and it is appropriate enough that he would ask that the court make bad law by utter disregard of a clear congressional purpose.

25. 110 Cong.Record 15866 (July 2, 1964).

26. E. g., Ford, Bacon & Davis v. Volentine, 64 F.2d 800, 801 (5th Cir. 1933).

27. 251 F.Supp. at 188.

Therefore, having carefully considered and weighed the arguments and the authorities, the court holds that this action, and the similar actions filed in this court without conciliation efforts having been undertaken, are properly to be and must be dismissed. No other result could conceivably be reached consistent with the procedure intended by Congress, and the court is firm and clear in so holding.