Rosemary **SOKOLOWSKI** et al., Plaintiffs,

v.

**SWIFT AND COMPANY, and United Packinghouse, Food and Allied Workers, A.F.L.–C.I.O., Local No. 167, and United Packinghouse, Food and Allied Workers, A.F.L.–C.I.O. International, Defendants.**

Henrietta B. **HOLZEMER,** Plaintiff,

v.

**SWIFT AND COMPANY and Local 167, United Packinghouse Workers of America, AFL–CIO, Defendants.**

**Nos. 3–68 Civ. 59 and 3–68 Civ. 58.**

United States District Court
D. Minnesota,
Third Division.
July 18, 1968.

Stephen A. Sulentic, So. St. Paul, Minn., for plaintiffs Sokolowski, and others.

Marvin J. Morrison, St. Paul, Minn., for plaintiff Henrietta B. Holzemer.

Grannis & Grannis by Vance B. Grannis, Jr., So. St. Paul, Minn., for defendant Swift and Co.

Sigal, Savelkoul, Cohen, Sween & Salazar by Donald C. Savelkoul, Minneapolis, Minn., and Cotton, Watt, Jones & King by Irving M. King, Chicago, Ill., for defendant unions.

NEVILLE, District Judge.

These cases are before the court not on the merits but on the motions of the defendants to dismiss the complaints of plaintiffs on the grounds that the court lacks jurisdiction of the subject matter and that the complaints fail to state claims upon which relief may be granted. The plaintiffs are eighteen female employees of Swift and Company and have instituted these actions pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging that the defendants have violated their rights to equal employment opportunities by discriminating against them on the basis of sex. Seventeen of these employees have retained common counsel and have instituted a single lawsuit as joint plaintiffs in the case of *Sokolowski et al.* The eighteenth employee, Henrietta B. Holzemer, has retained separate counsel and has instituted a separate action.

The complaint in the *Sokolowski* case (but not in the Holzemer case) purports in addition to the Civil Rights Act, to be based upon the National Labor Relations Act, 29 U.S.C. § 151 et seq., and upon the Fifth Amendment to the Constitution of the United States.

It appears that these 18 female employees of defendant Swift and Company filed charges of unlawful discrimination with the Equal Employment Opportunity Commission (Commission) during the year 1966, alleging that Swift and Company and the defendant Local 167, United Packinghouse Workers of America were, in their employment and job classification practices, unlawfully discriminating against them because of their sex.

A copy of the Commission's written ten-page decision is attached as Exhibit

"A" to the affidavit of plaintiff Rosemary Sokolowski. It states that 14 of the 18 female employees filed charges with the Commission on March 31, 1966, 3 filed charges on June 27, 1966, and the remaining employee filed charges on August 4, 1966. The Commission decision, dated more than a year later, i. e., October 11, 1967, held reasonable cause existed to believe that a violation of the Civil Rights Act had been committed "by maintaining a job classification and seniority system which discriminated on the basis of sex." The decision of the Commission refers to each of the 18 female employees now plaintiffs in these actions. Plaintiff Sokolowski received a letter from the Commission dated October 18, 1967, informing her of the Commission's determination and advising her that "[T]he Commission will attempt to eliminate this practice by conciliation as provided in Title VII."

Pursuant to the rules of the Commission, 29 C.F.R. § 1601.19(b), the defendants petitioned the Commission for a redetermination of its decision. Thereafter, plaintiff Sokolowski (and presumably the other 17 plaintiffs) received what appears to be a form letter from the Commission dated February 8, 1968 (a copy of which is attached as Exhibit "B" to the Sokolowski affidavit), entitled *NOTICE OF RIGHT TO SUE WITHIN 30 DAYS*. Such letter states:

"Dear Mrs. Sokolowski:

This is to advise you that conciliation efforts in the above matter have failed to achieve voluntary compliance with Title VII of the Civil Rights Act of 1964. *Pursuant to Section 706(e) of the Act, you are hereby notified that you may, within thirty (30) days of the receipt of letter, institute a civil action in the appropriate Federal District Court.* If you are unable to retain an attorney, the Federal Court is authorized in its discretion, to appoint an attorney to represent you and to authorize the commencement of the suit without payment of fees, costs or security. If you decide to institute suit and find you need assistance, you may take this letter, along with the Commission determination of reasonable cause to believe Title VII has been violated, to the Clerk of the Federal District Court nearest to the place where the alleged discrimination occurred, and request that a Federal District Judge appoint counsel to represent you.

Please feel free to contact the Commission if you have any questions about this matter." (Emphasis added)

The letter bears the signature of one Robert L. Randolph, Acting Director of Compliance.

On February 29, 1968, and within the aforesaid 30-day period, the complaint in *Sokolowski et al* was filed in this court. The separate action by Henrietta B. Holzemer was filed one day earlier, on February 28, 1968. After commencement of these actions, Mrs. Sokolowski (and presumably the other 17 plaintiffs) received from the Commission a letter dated March 7, 1968 (a copy of which is attached as Exhibit "C" to the Sokolowski affidavit) stating as follows:

"Dear Mrs. Sokolowski:

This is to advise you that the Commission has reconsidered its earlier decision in your case. A copy of the Ruling by the Commission is enclosed.

On February 21, 1968, the Commission determined that the Request for Reconsideration was timely filed by the Respondents, but insufficient in substance to merit any alteration in the findings and Decision originally issued.

*You have already been notified of your right to bring a § 706(e) action under Title VII.*

The Commission will, however, attempt to resolve the violations of the statute through conciliation. You will be contacted by the conciliator assigned to the case to discuss with you the appropriate form of remedy." (Emphasis added)

Attached to the affidavit of one Victor G. Perez, President of defendant Local 167, is a copy of a letter dated March 7, 1968 from the Commission addressed

to Mr. Irving M. King, Esq., attorney for the defendant Local 167, informing him of the decision of the Commission sustaining the findings and conclusions set forth in the original decision of October 11, 1967. A copy of this latter ruling is annexed to Exhibit "C" of the Sokolowski affidavit and bears two dates, i. e., February 21, 1968 and March 7, 1968.

Oddly enough defendants have tendered the affidavit of Robert L. Randolph, the Acting Director of Compliance of the Equal Employment Opportunity Commission and the signator of the Sokolowski letter of February 8, 1968 titled "Notice of Right to Sue Within 30 Days", wherein he states with respect to both the *Holzemer* case and the *Sokolowski et al* case:

> "No efforts to effect conciliation with respect to the charges filed by the plaintiffs in the above-described lawsuits were made by the Equal Employment Opportunity Commission prior to the filing of these suits on or about February 29, and 28, 1968, respectively."

Presently there is nothing before the court to indicate that anyone other than the plaintiff Sokolowski received the statutory "Notice of Right to Sue Within 30 Days" from the Commission declaring its inability to obtain voluntary compliance with the provisions of the Civil Rights Act. Defense counsel argues that at least 17 of the 18 cases should be dismissed on this ground alone. The court for purposes of discussing the nature of the statutory prerequisites to the maintenance of a civil suit under Title VII of the Civil Rights Act will assume that the same statutory notice was sent to all of the complaining employees who are parties plaintiff in the present actions. The Commission in its decision apparently considered the claims and charges of all 18 employees together and made common findings, conclusions and a decision with respect thereto. The court will allow plaintiffs 15 days from date hereof to present evidence by affidavit or certified copies of the existence of these letters. Failure to do so, unexplained, would seem to necessitate a dismissal of 17 of the 18 suits.

The defendants first contend that dismissal of these suits is required because the plaintiffs have not exhausted their administrative remedies before the Equal Employment Opportunity Commission as is required by Section 706(a), (e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(a), (e). The pertinent provisions therein read as follows:

> "(a) Whenever it is charged in writing under oath by a person claiming to be aggrieved, or a written charge has been filed by a member of the Commission where he has reasonable cause to believe a violation of this subchapter has occurred (and such charge sets forth the facts upon which it is based) that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, employment agency, or labor organization (hereinafter referred to as the 'respondent') with a copy of such charge and shall make an investigation of such charge, provided that such charge shall not be made public by the Commission. If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. * * *

> (e) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) of this section (except that in either case such period may be extended to not more than sixty days upon a determination by the Commission that further efforts to secure voluntary compliance are warranted), the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so

notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge (1) by the person claiming to be aggrieved, * * * "

The question thus confronting this court is whether the plaintiffs, or any of them, have fulfilled the statutory prerequisites to suit in Federal court under Title VII of the Civil Rights Act of 1964. There appears at least to some extent a split of authority as to the nature and extent of such requirements. This court holds suit will lie under the facts and circumstances of this case. The field is relatively so new that all cases (but one) that have been found or cited are District Court decisions and there is as yet no pronouncement from the Supreme Court nor from any but one Court of Appeals. The defendants cite and place heavy reliance on the case of Dent v. St. Louis-San Francisco Ry., 265 F.Supp. 56 (N.D.Ala.1967), wherein the plaintiff brought an action under Title VII alleging racial discrimination by his employer and local union. The court, upon a somewhat detailed analysis of the legislative history of the Civil Rights Act of 1964, concluded at p. 58:

"* * * the court is firmly of the opinion that conciliation was intended by Congress to be and is a jurisdictional prerequisite to the institution of a civil action under Title VII and that the actions instituted without this prerequisite must accordingly be dismissed."

A full reading of the opinion in *Dent* indicates that the court therein was of the opinion that *actual* conciliation effort by the Commission in compliance with 42 U.S.C. § 2000e–5(a) quoted supra, is a prerequisite to jurisdiction in Federal court, although there is no indication in that opinion as to whether compliance was there had with subdivision (e) of that same section, requiring that prior to institution of suit, the Commission must have notified the person aggrieved that the Commission had been " * * * unable to obtain voluntary compliance with

this subchapter". Thus that case contrasts with the situation in the present case where one (or all) of the plaintiffs received the statutory "Notice of Right to Sue Within 30 Days" signed by Robert L. Randolph, stating that:

"This is to advise you that conciliation efforts in the above matter have failed to achieve voluntary compliance with Title VII of the Civil Rights Act of 1964. * * * "

while the later affidavit of Mr. Randolph states that in fact "[N]o efforts to effect conciliation * * * " were made by the Commission with respect to any of the plaintiffs herein.

Likewise, in the cases of Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967), and Choate v. Caterpillar Tractor Co., 274 F. Supp. 776 (S.D.Ill.1967), cited in support of defendants' position, there is no indication that the plaintiffs had received from the Commission the statutory notice of its inability to obtain voluntary compliance. It is the receipt of such notice that 42 U.S.C. § 2000e–5(e), quoted supra, lists as prerequisite to the maintenance of a civil suit.

On the other hand, in those cases where the statutory notice had been received by the complaining parties, the district courts have been rather consistent in accepting jurisdiction while rejecting the contentions of defending employers and unions that since actual conciliation efforts had either not been attempted or had not been exhausted, jurisdiction in Federal court would not lie. As expressed by the court in Moody v. Albemarle Paper Co., 271 F.Supp. 27 at 29 (E.D. N.C.1967):

"After an aggrieved party has filed a written complaint with the Equal Employment Opportunity Commission and has received notice from the Commission that voluntary compliance within sixty days from receipt of the complaint by the Commission has not been effected, no further formal efforts toward conciliation by the Commission are necessary to open the district

courts to a private civil action by the complainant against a respondent named in the charge theretofore filed with the Commission. To the extent that *Dent,* supra, is inconsistent with this ruling, it is disapproved and not followed."

■ Perhaps the most convincing analysis of the conciliation requirement is found in Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258 (E.D.La.1967), where the court, after questioning the soundness of the *Dent* court's conclusions based upon the legislative history of the Civil Rights Act of 1964, went on to state, at 263:

"* * * But 42 U.S.C.A. § 2000e–5 (e) sets out only two requirements for an aggrieved party before he can sue: (1) he must file a charge with the E.E.O.C., and (2) he must receive the statutory notice from the E.E.O.C. that it has been unable to obtain voluntary compliance. There is nothing more that a person can do, and this Court will not ask that he be responsible for the Commission's failure to conciliate, as that body's inaction is beyond the control of the charging party. To bar a party from bringing a suit because the E.E.O.C. has shirked its statutory responsibility would indeed be to provide a hollow remedy and to inflict an undeserved penalty upon an innocent person. After all, the real villain in this drama, if indeed there be a guilty party, is not Anthony Hill or Pedro Mondy; the blame for the creation of this threat to the Court's jurisdiction and these plaintiffs' rights can only be placed at the doorstep of the E.E.O.C."

See also, in accord, Evenson v. Northwest Airlines, Inc., 268 F.Supp. 29 (E.D.Va. 1967); Bowe v. Colgate-Palmolive Co., 272 F.Supp. 332 (S.D.Ind.1967); Quarles v. Philip Morris, Inc., 271 F.Supp. 842 (E.D.Va.1967).

■ This court does not feel that Congress intended that the cause of action afforded under the Civil Rights Act should become a "hollow remedy". Furthermore, the language of 42 U.S.C. § 2000e–5(e) seems clearly to indicate that it was not the intention of Congress to provide a remedy that might never be available due either to the failure of the Commission to act or its inability to initiate effective steps at conciliation because of the massive volume of complaints before it or for any other reason. Rather, the purport of that subdivision seems to be that a "grace period" is provided (a maximum of 60 days) following the filing of a charge with the Commission, during which an action in Federal Court would be premature. Such 60 day period affords the Commission the *opportunity* to "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5 (a). In the instant case, moreover, it appears that nearly two years elapsed between the time of the filing of formal charges with the Commission and the institution of the present actions. Worthy of note here is the observation of the court in Reese v. Atlantic Steel Co., 282 F.Supp. 905, 906 (N.D.Ga.1967) addressing the same issue as is before this court:

"In passing, it is worth noting that the defendants' complaint that the Commission has made no effort to conciliate is not warmly received by the Court. The defendants have long been aware that the plaintiff felt he had a valid grievance under the Act. If the defendants feel that the complaint is without merit, they should welcome the opportunity to be vindicated in Court, while if they are of the opinion that the complaint is meritorious, they have had ample time to take conciliatory action on their own initiative without prodding from the Commission."

In that case, as in others cited herein, the plaintiff had received notification from the Commission that it had been unable to secure voluntary compliance.

■■ It is the opinion of this court based upon a close reading of the cases bearing upon the issue that a person has standing to maintain an action under Title VII of the Civil Rights Act of 1964

where he has met the dual requirements of 42 U.S.C. § 2000e–5(e), to wit, that he has filed charges with the Commission and that the Commission has notified him of its inability to obtain voluntary compliance with the provisions of the Act. Applying this analysis to the facts of the present case, this court holds that plaintiff Sokolowski has met such requirements, and with respect to the remaining 17 plaintiffs they will meet such upon presenting evidence by affidavit or certified copies as herein above stated.

Apart from all of the above, were defendants' arguments to be upheld, conciliation could go on for months, even years, and still not have been exhausted nor completed; meantime the Commission has formally advised of a 30 day period within which to sue. Congress could not have intended to put a complainant to such a decision and in such a precarious position as to have to make an election either not to sue because conciliation has not been undertaken and completed, or to suffer under the threat that a suit not brought within 30 days will be abortive.

The United Packinghouse, Food and Allied Workers, AFL–CIO International, defendant in the case of *Sokolowski, et al* (but not in *Holzemer*) moves to dismiss Count I of the complaint as to it on the further ground that at no time has any plaintiff filed charges against the International with the Equal Employment Opportunity Commission. The affidavit of one Ralph Helstein, President of the International, states that no such charges have ever been filed by any of the plaintiffs against the International. The affidavit of plaintiff Sokolowski and the copy of the Commission's decision of October 11, 1967 attached thereto in fact support this contention. 42 U.S.C. § 2000e–5(e) provides, in pertinent part:

"" * * * a civil action may within thirty days thereafter be brought against the respondent *named in the charge* * * *."" (Emphasis added)

The plaintiffs contend that since they have alleged in their complaint that Local 167 and the International are affiliated, the apparent jurisdictional defect has been cured. This court is of the contrary view. The court in Moody v. Albemarle Paper Co., 271 F.Supp. 27, 29 (E.D.N.C.1967), in resolving the question of whether a party must be named in the charge filed with the Commission before such party may be sued under Title VII of the Civil Rights Act of 1964, stated as follows:

" * * * the requirement that all defendants be named in the charge filed with the Commission goes to the competence of a district court to entertain the action in respect to the party in question (international union), as defined in clear language of the statute. Mickel v. South Carolina State Employment Service, supra. The contention that the local union is the agent of the international union is without merit, the records indicating that the local is merely affiliated with the international and enjoys an autonomous existence. This is insufficient to establish responsibility of the international for any alleged unlawful conduct on the part of the local."

See also Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967); Cox v. United States Gypsum Co., 284 F.Supp. 74 (N.D.Ind.1968); Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258 (E.D.La.1967).

The rationale of the above-cited cases seems to be that in the absence of allegations in the complaint, and later supported by evidence, that something in the nature of an agency relationship exists whereby one party is carrying out the plan of another to effect a discriminatory employment practice, each defendant must be named in the charge before the Commission in order that suit later may be brought against such person. The allegations in the complaint in *Sokolowski, et al* consisting only of the simple statement that the Local and the International are "affiliated" falls far short of such requirement. For this reason Count I of the *Sokolowski, et al* complaint must be dismissed as to the defendant

United Packinghouse, Food and Allied Workers, A.F.L.-C.I.O. International.

All of the defendants further urge that Count II of the complaint of plaintiffs in *Sokolowski, et al* be dismissed on the ground that such claim is cognizable in the first instance only before the National Labor Relations Board (NLRB), and that therefore this court lacks subject matter jurisdiction. Count II of the complaint purports to state a claim under the National Labor Relations Act, 29 U.S.C. § 151 et seq. Paragraph V of Count II alleges:

"That under and by virtue of 29 U.S.C.A. Sec. 151, et seq., the defendants, Local 167 and International, are the exclusive bargaining agent of the employees of Swift & Company including the plaintiffs. That as the said statutory bargaining agent, the defendants are obliged to represent all employees in said bargaining unit fairly and without invidious discrimination. That as a result of the aforementioned classification of employees because of sex, the defendant labor organizations have failed and intentionally refused to fairly represent the plaintiffs herein, and thus the plaintiffs have been deprived of their property without due process of law."

In the court's view, the substance of the claim set forth in paragraph V of Count II of the complaint is that the defendant labor organizations, as statutory bargaining representatives of the plaintiffs, have breached their duty to represent fairly the plaintiffs, resulting in the complained of discrimination and arbitrary job classification. The defendants strongly urge that such a claim at least "arguably" alleges an unfair labor practice within the purview of § 7 and § 8 of the National Labor Relations Act, 29 U.S.C. § 157 and § 158, and that therefore jurisdiction rests with the NLRB under the preemption doctrine of San Diego Building Trades v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The Supreme Court in *Garmon* articulated the preemption doctrine in the following language, 359 U.S. at 245, 79 S.Ct. at 780:

"When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

Defendants rely also on the recent 8th Circuit case of Woody v. Sterling Aluminum Products, Inc., 8 Cir., 365 F.2d 448 (1966), where the court, addressing the question of whether the preemption doctrine applied to a claim of a union member that his union had breached its duty of fair representation, stated at 456:

" * * * We think it is at least arguable that these allegations, if true, would be an unfair labor practice within the protection of § 7 and prohibition of § 8 of the Act 'although there are differing views on whether a violation of the duty of fair representation is an unfair labor practice under the Labor Management Relations Act. * *. *' Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Unlike Moore, however, plaintiffs' allegations here are not contract oriented and not, therefore, 'within the cognizance of federal and state courts.' Smith v. Evening News Ass'n., supra."

The 8th Circuit thus held that a claim such as the instant one was within the scope of the rule in *Garmon*.

 The Supreme Court has more recently held, however, that an aggrieved union member has a claim cognizable in a court of law against his union for breach of its duty fairly to represent him, and that such is not within the preemption doctrine since, as stated by the court in Vaca v. Sipes, 386 U.S. 171, at 180–183, 87 S.Ct. 903, at 912–913, 17 L.Ed.2d 842 (1967):

"A primary justification for the pre-emption doctrine—the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the develop-

ment of such rules to the administrative agency created by Congress for that purpose—is not applicable to cases involving alleged breaches of the union's duty of fair representation. * * *

* * * This Court recognized in *Steele* that the congressional grant of power to a union to act as exclusive collective bargaining representative, with its corresponding reduction in the individual rights of the employees so represented, would raise grave constitutional problems if unions were free to exercise this power to further racial discrimination. 323 U.S., at 198–199, 65 S.Ct., at 230–231, 89 L. Ed.2d 173. Since that landmark decision, the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law. Were we to hold, as petitioners and the Government urge, that the courts are foreclosed by the NLRB's *Miranda Fuel* decision from this traditional supervisory jurisdiction, the individual employee injured by arbitrary or discriminatory union conduct could not longer be assured of impartial review of his complaint, since the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint. See United Electrical Contractors Assn. v. Ordman, 366 F.2d 776, cert. denied, 385 U.S. 1026, 87 S.Ct. 753, 17 L.Ed.2d 674. The existence of even a small group of cases in which the Board would be unwilling or unable to remedy a union's breach of duty would frustrate the basic purposes underlying the duty of fair representation doctrine. For these reasons, we cannot assume from the NLRB's tardy assumption of jurisdiction in these cases that Congress, when it enacted N.L.R.A. § 8(b) in 1947, intended to oust the courts of their traditional jurisdiction to curb arbitrary conduct by the individual employee's statutory representative."

In *Vaca,* the plaintiff brought suit in state court in Missouri against certain union officials alleging that after the wrongful discharge of plaintiff by his employer, the union had arbitrarily and wrongfully refused to take his grievance to arbitration. The defendants in the present case would have this court construe the holding in *Vaca* to be limited to what they term "contract-oriented" claims, where the courts have been given primary jurisdiction by virtue of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. It was settled before *Vaca,* however, that the preemption doctrine did not oust the courts of jurisdiction over breach of contract claims against unions or employers under § 301 of the L.M.R.A., see Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L. Ed.2d 246 (1962).

A close reading of Justice White's opinion for the majority in *Vaca,* as well as the concurring—dissenting on this issue—opinion of Justice Fortas and the dissent of Justice Black, leads to the conclusion that the rule in *Vaca* goes much further than defendants would urge. The court did state, at 386 U.S. 183, 87 S.Ct. 913, that:

"* * * the question of whether a union has breached its duty of fair representation will *in many cases* be a critical issue in a suit under L.M.R.A. § 301 charging an employer with a breach of contract." (Emphasis added)

The court did not, however, hold that a suit for breach of contract under L.M. R.A. § 301 would mark the outer limits of jurisdiction in the courts where an employee charges the union with failure to fairly represent. As the court stated, at 386 U.S. 188, 87 S.Ct. at 915:

"Given the strong reasons for not pre-empting duty of fair representation suits *in general,* and the fact that the courts in many § 301 suits must adjudicate whether the union has breached its duty, we conclude that

the courts may also fashion remedies for such a breach of duty." (Emphasis added)

■ This court does not now express a view as to the merits of plaintiffs' charge that the unions have failed fairly to represent them, but only here holds that in light of the decision in *Vaca,* jurisdiction of such claims is not pre-empted by the National Labor Relations Board. Paragraph V of this count there-fore must stand as to both the Local and the International Unions.

■ Count II of the complaint in *Sokolowski, et al* further alleges, in Paragraph VI thereof: .

"That the defendant, Swift and Company, has conspired with the de-fendant labor organizations to dis-criminate against the plaintiffs be-cause of their sex * * * "

The defendant Swift and Company moves to dismiss Count II insofar as the claims therein purport to state claims against it. Paragraph IV of Count II alleges that the action therein arises:

" * * * under the National Labor Relations Act, 29 U.S.C.A. 151, et seq., under Title VII of the Civil Rights Act of 1964, Public Law 88–352, 78 Stat. 241, 42 U.S.C.A. § 2000e and under the 5th Amendment to the United States Constitution."

The court is unable to determine, on the basis of the allegation in Paragraph VI of Court II above quoted, upon which if any of the laws set forth above the claim against Swift & Company purports to be based. Such claim either is basically repetitious of allegations in Count I re-lating to violations of the Civil Rights Act, or, if related to federal labor law, is indefinite and vague as to facts sup-portive of jurisdiction. It bears no pleaded relation to the Fifth Amendment. The language of Paragraph VI of Count II above quoted will thus be stricken.

As noted above, the *Sokolowski, et al* complaint pleads as the basis for juris-diction in Count II, in addition to the National Labor Relations Act, Title VII of the Civil Rights Act of 1964 and the Fifth Amendment to the United States Constitution. All of the defendants in that case move to dismiss insofar as any of the claims in Count II are based upon either of these grounds. The court grants this motion. Again to the extent the allegations in Count II state claims under Title VII of the Civil Rights Act of 1964 such are redundant, adding noth-ing to the allegations of Count I. In ad-dition, no facts pleaded therein would support any claim purportedly based upon the Fifth Amendment. Therefore such also will be stricken. Thus the court strikes Paragraphs IV and VI of Count II of the Sokolowski complaint and leaves Paragraph V which asserts a claim against both union defendants.

All of the defendants move to dismiss the complaint in both cases on the grounds that the pleadings fail to state claims upon which relief may be granted, since such are allegedly vague and in-definite. Alternatively, defendants seek an order of the court requiring the plain-tiffs to furnish more definite statements of the nature of their claims. The court is not disposed to dismiss these cases for defects in the pleadings, but feels that defendants' alternative request is well made. The complaint in the *Holzemer* case is particularly vague and ambiguous though not fatally defective. The court is disposed to order that more definite statements be filed in both cases within 20 days from date hereof setting forth:

a. all of the alleged particular acts of discrimination as to each plain-tiff by virtue of sex;

b. the employment benefits and op-portunities alleged to have been wrongfully withheld as to each plaintiff as a result thereof; and

c. the time periods as to each plain-tiff during which said acts and occurrences took place.

A separate order has been filed.