**Hershey JOHNSON**

v.

**The LOUISIANA STATE EMPLOYMENT SERVICE IN SHREVEPORT, Louisiana, et al.**

**Civ. A. No. 13845.**

United States District Court
W. D. Louisiana,
Shreveport Division.
Dec. 31, 1968.

Murphy W. Bell, Baton Rouge, La., Jack Greenberg, Robert Belton, and Gabrielle A. Kirk, New York City, for plaintiff.

John S. Webb, Shreveport, La., James A. Piper, Baton Rouge, La., for defendants.

## DENIAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAWKINS, Chief Judge.

Invoking the provisions of Title 7 of the Civil Rights Act (hereinafter referred to as "the Act"), 42 U.S.C. § 2000e et seq., plaintiff brings this action alleging racial discrimination in the policies, practices, customs, and usages of the Shreveport, Louisiana, office of defendants, including the Louisiana Division of Employment Security. He asserts that such alleged discrimination has been exerted against him and the class he claims to represent. Defendants countered with a motion for summary judgment, which at this time is presented to us for decision.

In March of 1967, plaintiff and three other persons filed a written charge with the Equal Employment Opportunities Commission (hereinafter referred to as EEOC), wherein they alleged that, for years, the Shreveport office of defendants had engaged in continuous acts of racial discrimination against them and others of the Negro race.

Thereafter EEOC conducted an investigation and rendered a decision, dated January 29, 1968, wherein after reviewing factual findings of its investigation, it expressed the following conclusions:

"1. Reasonable cause exists to believe that Respondent is in violation of Sections 703(a) (1) and (b) of Title VII of the Civil Rights Act of 1964 by:

"a. Failing to refer qualified Negroes to jobs other than those of a domestic or menial nature;

"b. Administering tests to female applicants for employment at the Louisiana Ammunition Plant, while not requiring such tests for male applicants;

"c. Maintaining segregated facilities;

"d. Technically precluding Charging Parties and other Negroes from being considered as employment interviewers.

"e. Failing to refer Charging Parties Pearline Clark and Gloria Johnson for employment at the Louisiana Ammunition Plant on the basis of their test scores."

On or about May 10, 1968, plaintiff received a letter from EEOC advising him that conciliation efforts in his case had failed to achieve voluntary compliance with the Act and that pursuant to Section 706(e) of the Act, he could, within thirty days of receipt of that letter, institute a civil action in the appropriate federal district court.

June 7, 1968, plaintiff filed his complaint here. July 19, 1968, defendants filed their motion for summary judgment wherein the following assertions were made and supported by accompanying affidavits by employees of defendants: that their ('defendants') records reflected that the first time plaintiff, Johnson, filed a written job application was on May 30, 1967, some two months following his charge filed with EEOC; that Johnson was not qualified for the position for which he applied, as an employee interviewer, because he did not have the required college degree or work experience; that the only reason there were no Negroes in professional, technical, or clerical positions in defendants' Shreveport office was that none had been certified on the Register of the Department of Civil Service of the State of Louisiana as being qualified for any of the jobs; and that elsewhere in the State defendants have thirty-six Negro employees in professional and clerical positions; that defendants have, in spirit and in fact, closely followed the requirements of the Act; that the issue of racial discrimination is moot because it already has, in effect, been enjoined by Presidential executive orders, contracts, regulations and guidelines of the Secretary of Labor of the United States, from discrimination on the basis of race, color, religion, and national origin; that the Act does not cover defendants' activities because it is not an "employer" within the meaning of the Act. In the alternative, defendants move this Court to "remand" this matter to EEOC for further investigation of the charges. In support of this "Motion to Remand," defendants attached affidavits by several of their employees who expressed their belief that EEOC's conclusion was based on a cursory investigation. These employees also said that EEOC's conciliation efforts were inadequate, amounting to nothing more than a meeting with defendants' employees at which the EEOC representative was completely unreceptive to defendants' position, and, in effect, threatened defendants with prosecution by the United States Attorney General if it did not admit the truth of the charges made by plaintiff.

Attached to plaintiff's motion in opposition to defendants' motion for summary judgment, are affidavits by Johnson, and other members of his class. In Johnson's affidavit he maintained that during the last six years he had made numerous visits to defendants' office in Shreveport, seeking employment as an interviewer or referral to other employment for which his years of education (at the time of filing of the suit, John-

son needed three credits to receive his Bachelor of Arts degree from Grambling College) would entitle him; that he was consistently denied such employment or referral because, according to his belief, he was a Negro; that at one such visit, during late January or early February of 1967, he was told that he did not qualify for the interviewing job because he had no college degree but he was urged to accept a job as a "yard cutter"; that at no time was he informed that he must take and pass a Civil Service test to qualify for the interviewer job; that he was further told that if he did not want a job as a "yard cutter," no help could be given to him; and that he had made subsequent unsuccessful trips to the Shreveport employment office. The other affidavits were by three other Negroes, two of whom had college degrees and the other had some college training.

All of them said that they had tried, to no avail, to secure through defendants' Shreveport office employment commensurate with their education and that they had been referred to nothing better than menial jobs such as porters, grocery store checkers, and domestic jobs. One of the affiants said he accompanied Johnson to the employment office in late January, 1967, and saw an interviewer tear up what appeared to be Johnson's job application and throw it in a trash can.

To sustain defendants' motion for summary judgment, we must find "that there is no genuine issue as to any material fact" and "that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. Defendants, the moving parties, fall far short of meeting that test.

■ Far from erasing the issues presented by plaintiff, the affidavits by defendants' employees, wherein they deny and attempt to explain the alleged racial discrimination, only indicate that many issues of fact still exist. As stated in Subin v. Goldsmith, 224 F.2d 753, 758 (2d Cir. 1955), cited with approval in Alabama Great Southern Railroad Company v. Louisville & Nashville RR Co., 224 F.2d 1, 50 A.L.R.2d 1302 (5 Cir. 1965):

"* * * For the credibility of the persons who here made the affidavits is to be tested when they testify at a trial. Particularly where, as here, the facts are peculiarly in the knowledge of defendants or their witnesses, should the plaintiff have the opportunity to impeach them at a trial; and their demeanor may be the most effective impeachment. Indeed, it has been said that a witness' demeanor is a kind of 'real evidence'; obviously such 'real evidence' cannot be included in affidavits. * * *"

■ Defendants' contention that they are not an "employer" within the meaning of the Act is without merit because it erroneously presupposes that the Act reaches only discriminatory acts by "employers." The Act, at 42 U.S.C. § 2000e–2, prohibits discriminatory practices by "an employment agency." 42 U.S.C. § 2000e defines an "employment agency" as

"* * * any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person; but shall not include * * * an agency of a State or political subdivision of a State, *except that such term shall include * * * the system of State and local employment services receiving Federal assistance.*" (Emphasis added.)

Defendants readily admit that they are a federally granted agency of the State of Louisiana, whose entire funds of operation are paid by Federal monies.

We next turn to defendants' "Motion to Remand" based on alleged inadequate conciliation efforts by EEOC. Defendants' reliance on Mickel v. So. Carolina State Employment Service, 377 F.2d 239 (4 Cir. 1967), clearly is misplaced. There, *no conciliation attempts at all*

were made with respect to defendant, Exide Battery Service. The Court granted Exide's motion for summary judgment because plaintiff had "thus failed to satisfy the statutory requirements prior to the institution of her civil action." Particular reliance was placed on the holding of Dent v. St. Louis-San Francisco Ry. Co., 265 F. Supp. 56 (N.D.Ala., 1967), that conciliation attempts were a "jurisdictional prerequisite to the institution of a civil action under Title VII and that the actions instituted without this prerequisite must accordingly be dismissed."* *Dent* was another case where the conciliation step had been *completely skipped*. However, neither of these, nor any other cases cited to us, indicate that a court should examine the *adequacy of the conciliation attempts* in an effort to determine whether jurisdiction exists.

■ Thus we hold that since *a* conciliation step in this case was taken, this Court does have jurisdiction. There is another aspect to the problem, here presented, of the adequacy of the conciliation step. The last sentence of Section 706(e) of the Act, 42 U.S.C. § 2000e–5(e), provides:

"* * * Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (b) of this section or the efforts of the Commission to obtain voluntary compliance."

We feel that defendants, in effect, requested a stay of proceedings so that further conciliation efforts could be made.

*Dent, supra,* in discussing the question of whether conciliation efforts are prerequisite to a civil action under the Act, said:

"This is the only result which could be reached consistent with the congressional intent, for the legislative history establishes conclusively and beyond doubt that Congress intended that conciliation be preferred to coercion and that the conciliation step would be a prerequisite to the institution of a civil action under this title.

"From the outset and continuously throughout the legislative process which produced this statute, emphasis was placed on the conciliation step and on the fact that enforcement proceedings would not be initiated without an effort having been made to resolve the matter through conciliation.

"At an early day in this legislative history, the Report of the House Education and Labor Committee on the bill providing for adjudication by the Commission stated that 'It is the intent of the Committee that maximum efforts be concentrated on informal and voluntary methods of eliminating unlawful employment practices before commencing formal procedures' and that 'Formal proceedings leading toward an order of the Commission should be pursued only when informal methods fail or appear futile.' [Footnote here omitted.]

\*    \*    \*    \*    \*    \*

"It was further explained in a similar vein that 'If the procedures before the Commission are unsuccessful the complainant may seek relief in the federal courts', that 'Section 706(e) pro-

---

* Compare, Johnson v. Seaboard Coast Line R.R. Co., 405 F.2d 645 (4 Cir. 1968), where the complaining employee had filed a charge with EEOC but EEOC had notified him that it had been "impossible to undertake or to conclude conciliation efforts" due to a heavy work load. The Fourth Circuit said: "* * * To give ample scope to the policy in favor of voluntary compliance, we have held, and

now affirm, that the Commission cannot be bypassed entirely. * * * To give ample scope to the policy in favor of timely remedial action, we now hold that the individual aggrieved may file a suit in the district court when he has received the statutory notice from the Commission and that he need not await an actual attempt by the Commission to achieve voluntary compliance. * * *"

vides for suit by the person aggrieved after conciliation has failed', that 'those of us who have worked upon the substitute package have sought to simplify the administration of the bill * * * in terms of seeking a solution by mediation of disputes, rather than forcing every case before the Commission or into a court of law', and that 'We have placed emphasis on voluntary conciliation—not coercion.'" (Footnote here omitted.)

We believe, in light of the discussion of the Congressional history of this Statute, that it is most relevant to a decision as to whether a court should exercise its power to grant a stay to provide for further efforts in order to obtain voluntary compliance.

 The affidavits of defendants' employees convince us that they genuinely are interested in reaching agreement at the conciliation stage. Moreover, we believe that allowing such would be following the letter as well as the spirit of the Act by placing "emphasis on the voluntary conciliation—not coercion."

We, therefore, grant a stay of further proceedings for sixty days so that further conciliation efforts may be made. It is sincerely to be hoped that these efforts will be diligent and fruitful, resulting in full compliance with the Act.

As previously indicated, the jurisdictional requirement has been met; so that, if, at the end of sixty days from the date of the decree to be entered herein, the parties remain deadlocked, this suit will be reactivated, and eventually we will hear the merits and decide whether the "coercion" course, so dreaded by Congress and by this Court, must follow.

A proper decree should be presented.

### ADDENDUM

Subsequent to our decision in this case, the *Dent* case to which we referred in the text, was reversed. See Dent v. St. Louis-San Francisco Railway Co., 406 F.2d 399 (5th Cir. 1969). That re-

versal, however, does not require a different result here. Rather, it adds weight to our decision. See, *e.g.*, the following language from the appellate decision:

"Thus it is quite apparent that the basic philosophy of these statutory provisions is that voluntary compliance is preferable to court action and that efforts should be made to resolve these employment rights by conciliation both before and after court action. * * *

\* \* \* \* \* \*

"It is not to be doubted that Congress did intend that where possible these controversies should be settled by conciliation rather than by litigation. The statute ought to be so administered." 406 F.2d 399, at 402 and 404.

(N.B.—Since the above order was issued, the parties effected full conciliation of their differences and the suits have been settled and dismissed.)