**Pedro MONDY, Plaintiff,**

v.

**CROWN ZELLERBACH CORPORATION et al., Defendants.**

**Anthony HILL et al., Plaintiffs,**

v.

**CROWN ZELLERBACH CORPORATION et al., Defendants.**

**Civ. A. Nos. 66–242, 67–286.**

United States District Court
E. D. Louisiana,
New Orleans Division.

July 26, 1967.

---

Dodd, Hirsch, Barker & Meunier, C. Paul Barker, Trial Atty., New Orleans, La., for United Papermakers and Paperworkers International AFL-CIO and Local 189 of the United Papermakers and Paperworkers AFL-CIO, defendants.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Michael J. Molony, Jr., Trial Atty., New Orleans, La., for Crown Zellerbach Corp., defendant.

Revius O. Ortique, Jr., New Orleans, La., for Local 189-A of United Papermakers and Paperworkers AFL-CIO, defendant, and Pedro Mondy, plaintiff.

Collins, Douglas & Elie, Richard B. Sobol, Trial Atty., New Orleans, La., George Cooper, New York City, for Anthony Hill, John Martin Oatis, David Johnson, Sr. and R. T. Young, plaintiffs.

Ramsey Clark, Atty. Gen., Dept. of Justice, Washington, D. C., Joseph R. Terry, Jr., Dept. of Justice, New Orleans, La., John Doar, Asst. Atty. Gen., Washington, D. C., Louis C. LaCour, U. S. Atty. for Eastern Dist. of Louisiana, New Orleans, La., John Bingler, Jr., Dept. of Justice, James Turner, Elihu I. Leifer, Dept. of Justice, Russell Spector, Equal Employment Opportunity Commission, Washington, D. C., for Equal Employment Opportunity Commission, intervenor.

COMISKEY, District Judge:

These two cases have been consolidated because they involve certain common questions of law and fact. In both cases Negro employees have brought actions against Crown Zellerbach Corporation under Title VII of the Civil Rights Act of 1964 after charges of discriminatory employment practices were filed with the Equal Employment Opportunity Commission. The charging parties have received letters from that agency advising them that it was unable to achieve a conciliation.

In Anthony Hill, et al. v. Crown Zellerbach Corporation, et al., Civil Action No. 67–286, four Negroes employed at the Mill Plant of the defendant corporation, which is located in Bogalusa, Louisiana, are maintaining an action on their own behalf, and on behalf of other Negroes similarly situated. The defendants in this case are Crown Zellerbach Corporation, United Papermakers and Paperworkers International Union, AFL-CIO, and the two Bogalusa Locals of that labor organization, Local 189 and 189–A. Local 189 is composed entirely of white employees, while the members of 189–A are all Negroes. The Equal Employment Opportunity Commission moved for leave to intervene, and its motion has been granted. Defendants have filed motions in both cases to dismiss for lack of jurisdiction, or in the alternative, for summary judgments in their favor. These motions are presently before the court and form the subject matter of this opinion.

Plaintiffs allege that until 1966 Crown Zellerbach maintained, pursuant to a collective bargaining agreement with the other defendants, separate lines of progression for white and Negro workers, reserving the better-paying and more desirable jobs for whites. In early 1966 these lines were nominally merged, but Crown, in cooperation with the International and the white local, allegedly created other barriers to employment of,

or advancement by, Negro applicants and employees. Plaintiffs claim that this act violates Section 703 of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–2. Some of these alleged barriers are the adoption of personnel tests administered as a condition precedent to employment or advancement, which are used or intended to be used to discriminate against Negroes; the creation and use of "trainee groups" in each department, admission to which is limited to white employees, which enable white trainees to "leapfrog" past Negro employees with greater seniority; and the discriminatory and fraudulent use of "waiver of promotions" to deprive Negro employees of their seniority rights. Plaintiffs further assert that Crown maintains segregated shower, locker and lavatory facilities in the Mill Plant and that the white employees are provided with superior facilities.

Plaintiff Anthony Hill has been employed in the Recovery Room of the Mill Plant for over 27 years. The highest position he has attained is that of "temporary" helper. When that job is not available, Hill works in a utility position. Plaintiffs allege that while Negroes are employed in the Recovery Room only in utility positions and occasionally as temporary helpers, white workers who have been admitted to the trainee groups are placed ahead of all Negroes in the line of progression regardless of seniority. On September 9, 1966, Hill filed a charge against the defendants, Crown, the International, and the two locals, with the Equal Employment Opportunity Commission. On February 14, 1967, the Commission wrote Hill that it was unable to obtain voluntary compliance from the defendants. Suit was filed on March 1, 1967, within thirty days after receipt of the letter from the Commission.

The other three named plaintiffs are also employed at the Mill Plant. However, none of these plaintiffs have filed charges with the Equal Employment Opportunity Commission.

Plaintiffs ask that the defendants be enjoined from engaging in the alleged discriminatory employment practices and for whatever further relief, including promotion and back pay, which may be necessary and proper.

The other case, Pedro Mondy v. Crown Zellerbach Corporation, et al., involves a similar situation. Pedro Mondy is a "temporary" employee in the job of "Recovery Room Combination Helper." He alleges that he is not classified as a "permanent" employee because of his low position in the progression line below many white workers who hold seniority which plaintiff claims was illegally gained by virtue of the pre-1966 practice of maintaining segregated lines of progression. These lines of progression were merged in early 1966 after several meetings had been held with the Chairman of the Equal Employment Opportunity Commission, Franklin D. Roosevelt, Jr. But plaintiff Mondy claims that since Negroes had been given the undesirable, low-paying, unskilled jobs before the lines were merged, Negroes are now at the bottom of the merged lines leading to the more desirable job classifications.

On May 27, 1966, Mondy filed a charge with the Equal Employment Opportunity Commission against Crown Zellerbach and the white local. He subsequently received his statutory letter and now brings an action on his own behalf and on behalf of all other Negro employees and prospective employees of the Crown Zellerbach Corporation, who he claims are similarly situated. He is maintaining this action against Crown Zellerbach and the United Papermakers and Paperworkers International Union, AFL–CIO, but he has omitted suing the white local. He asks for injunctive relief prohibiting defendants from engaging in the employment practices complained of and for any additional relief which is equitable and just.

Several significant points have been raised in memoranda and in arguments on the motions to dismiss, and each of these contentions will be considered separately.

## PRESCRIPTION

42 U.S.C.A. § 2000e–5(e) states that the E.E.O.C. has a maximum period of sixty days within which to attempt to conciliate the problem raised by the charge. If at the end of this period, "the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge * * *."

It is argued by the defendant unions that Anthony Hill's suit should be dismissed because he failed to maintain his action within the ninety day period mentioned in the statute. Anthony Hill did succeed in bringing suit well within the thirty day period following his receipt of the Commission's statutory notice of its failure to achieve a conciliation, but the E.E.O.C. delayed sending this letter to Hill for over five months.

The difficulty with the defendants' argument is that it places any person wishing to sue under Title VII in an impossible position. If such a party tried to sue within the ninety day period without first receiving the statutory notice, he would be met with the objection that he was suing prematurely, since 42 U.S.C.A. § 2000e–5(e) says that he may bring a civil action *after* being notified by the Commission of its failure to obtain voluntary compliance. Therefore, he would have to wait until he received the statutory notice from the E.E.O.C. But by this time the ninety days might well have passed and he would be met with the argument that he was barred by prescription. Surely, Congress could not have intended for an aggrieved party to be denied his remedy under Title VII because of the failure of the E.E.O.C. to notify him within sixty days. We feel that the proper interpretation of 42 U.S.C.A. § 2000e–5(e) is that a charging party must file suit within thirty days after receipt of the statutory notice from the E.E.O.C., regardless of the delay before such notice is given to him.

Other courts have agreed with our interpretation of the statute. In Dent v. St. Louis-San Francisco Railway, 265 F. Supp. 56 (N.D.Ala., 1967) the same argument of prescription was raised, but the court disagreed, stating that the sixty day requirement for conciliation should be given a directory rather than a mandatory construction and that a civil suit should not be barred because of the failure of the Commission to conciliate within that time. In Ward v. Firestone Tire & Rubber Co., 260 F.Supp. 579, 580 (W.D.Tenn., 1966), the court did not have to make a decision on this point, but commented on the prescription argument because it had been raised by the defendants in that case:

> "Since it is not necessary to our decision here, we will not decide this question. However, by way of comment we point out that the result contended for by defendants would be anomalous in that plaintiff would in a sense be penalized because of the failure of the Commission to perform its statutory duties within the time allowed."

## THE CONCILIATION REQUIREMENT

It is vigorously contended by the defendants that this Court lacks jurisdiction because there has been no effort at conciliation by the Equal Employment Opportunity Commission in either of the cases before the Court. In fact, the Court was told that the defendants were not even notified by the Commission of the charges filed against them, in spite of the clear language of 42 U.S.C.A. § 2000e–5(a), which expressly provides that "the Commission shall furnish" the party or parties charged "with a copy of such charge * * *."[1]

---

1. The Court was informed by counsel for the Equal Employment Opportunity Commission that it is the policy of that body never to notify the charged party of the charge filed against it until the Commission has conducted its investigation. The reason for this rather unusual policy is that the E.E.O.C. fears that the

Defendants rely on two parts of 42 U.S.C.A. § 2000e–5, which provide as follows:

"(a) Whenever it is charged * * by a person claiming to be aggrieved * * * that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, employment agency, or labor organization * * * with a copy of such charge and shall make an investigation of such charge * * *. If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. * * *

* * * * * *

"(e) If within thirty days after a charge is filed with the Commission * * * (except that * * * such period may be extended to not more than sixty days * * *), the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge * * *."

These provisions do not expressly require conciliation as a condition precedent to the filing of a civil suit. 42 U.S.C.A. § 2000e–5(a) does command the E.E.O.C. to attempt conciliation, but it does not prohibit a charging party from filing suit when such an attempt fails to materialize. 42 U.S.C.A. § 2000e–5(e) lends more support to defendants' contentions, as it indicates that a civil suit may be brought only after the complainant has been notified that the Commission was unable to obtain voluntary compliance. The question which must be now answered is whether we must read the requirement of § 2000e–5(a) into § 2000e–5(e).

Defendants present an ingenious argument based on legislative history, and the case of Dent v. St. Louis-San Francisco Railway, supra, is strongly relied upon, as that court dismissed a suit which had not been preceded by conciliatory efforts by the Commission. The court held that the legislative history manifests Congress' intention that there must be some attempt at conciliation before suit can be brought.

But the legislative history is not as clear as the defendants suggest. While the defendants point to many statements made by Congressmen during the debate over Title VII which indicate that there must be a conciliation effort before a civil action may be maintained, there are other assertions which were made at that time which cast doubt on, or sometimes even directly contradict, the statements relied upon by defendants. A cursory examination of the various speeches delivered during that period makes it clear that both sides can find some comfort in the Congressional Record. For example, Senator Sam J. Ervin stated that:

"the Commission holds the key to the courthouse door, which cannot be unlocked for the aggrieved party's benefit unless the Commission finds that there is reasonable cause to believe the employer guilty of the charge of discrimination and fails to adjust the complaint by conciliation." [2]

Viewed in isolation, Senator Ervin's remark makes it seem very clear that there must be a conciliation attempt before a civil action can be maintained. But this position is dealt a sharp blow when this statement by Senator Jacob Javits is considered:

"* * * the Commission does not have to find that the complaint is a valid one before the complainant individually can sue or before the Attor-

---

charged employer or labor organization might engage in acts of intimidation or harassment against the aggrieved party

in retaliation for his having resorted to the Commission.

2. 110 Cong.Rec. 14188 (June 17, 1964).

ney General can bring a suit to establish a pattern or practice of discrimination. The Commission may find the claim invalid; yet the complainant still can sue, and so may the Attorney General, if he finds reasonable cause for doing so. In short, the Commission does not hold the key to the courthouse door. The only thing this title gives the Commission is time in which to find that there has been a violation and time in which to seek conciliation.

\* \* \* \* \* \*

"But \* \* \* that is not a condition precedent to the action of taking a defendant into court. A complainant has an absolute right to go into court, and this provision does not affect that right at all." [3]

Again, defendants find support in this assertion by Representative Lindsay:

"The order of progression is as follows: First is the charge, \* \* \* then there may follow an investigation. The third step sets in motion conciliation procedures \* \* \* it is called voluntary compliance \* \* \* unless this voluntary procedure is complied with nothing further can happen." [4]

But plaintiffs can place just as much reliance upon this statement made by the then Senator Hubert Humphrey:

"The individual may proceed in his own right at any time. He may take his complaint to the Commission, he may by-pass the Commission, or he may go directly to the court." [5]

■ We have quoted these portions of the Congressional Record to demonstrate the danger of relying too heavily upon the legislative history to show the Congressional intent behind the law. Judging from the varying interpretations Title VII has been given during its short history, it is no surprise that the members of Congress also had conflicting views on its provisions and expressed them in the Congressional Record. If Congress had truly intended that the E.

E.O.C.'s attempt at conciliation should be a prerequisite to the possibility of a civil suit, all it had to do was clearly state its intention in the statute. We feel that this problem is properly treated as one of exhausting administrative remedies. These plaintiffs have decided to proceed under Title VII of the Civil Rights Act of 1964, and therefore they must do everything in their power to achieve their goals through the E.E.O.C. before going to court. But 42 U.S.C.A. § 2000e–5(e) sets out only two requirements for an aggrieved party before he can sue: (1) he must file a charge with the E.E.O.C., and (2) he must receive the statutory notice from the E.E.O.C. that it has been unable to obtain voluntary compliance. There is nothing more that a person can do, and this Court will not ask that he be responsible for the Commission's failure to conciliate, as that body's inaction is beyond the control of the charging party. To bar a party from bringing a suit because the E.E.O.C. has shirked its statutory responsibility would indeed be to provide a hollow remedy and to inflict an undeserved penalty upon an innocent person. After all, the real villain in this drama, if indeed there be a guilty party, is not Anthony Hill or Pedro Mondy; the blame for the creation of this threat to the Court's jurisdiction and these plaintiffs' rights can only be placed at the doorstep of the E.E.O.C.

Furthermore, this Court is aware that the *Dent* decision has met with disagreement in several cases. In Evenson v. Northwest Airlines, 268 F.Supp. 29 (E.D.Va., March 17, 1967), the court said:

"Northwest, in pressing its motion to dismiss contends that the suit was prematurely filed; that the Commission, under the Civil Rights Act, must attempt to secure voluntary compliance by means of conciliation before the Court can entertain the plaintiff's suit.

3. 110 Cong.Rec. 14191 (June 17, 1964).
4. 110 Cong.Rec. 2565 (February 8, 1964).

5. 110 Cong.Rec. 14188 (June 17, 1964).

264

"E.E.O.C. admits that its case load and lack of trained employees prevented it from a formal scheduling for conciliation proceedings within sixty days from receipt of the plaintiff's complaint. All they have to do under the Act is to show that voluntary compliance has not been accomplished within the said sixty-day period. To require more would be to deny a complainant the right to seek redress in the courts, resulting wholly from circumstances beyond her control."

The *Evenson* case was followed in preference to the *Dent* decision in Quarles et al. v. Philip Morris, Inc. et al., 271 F. Supp. 842 (E.D.Va., April 11, 1967), in which it was stated:

"Quarles and Briggs [the plaintiffs] fully complied with 42 U.S.C.A. 2000 e–5. They are not required to prove what efforts, if any, the Commission made to conciliate. Indeed, 2000e–5 (a) severely restricts information concerning conciliation.

"The plaintiff is not responsible for the acts or omissions of the Commission. * *. * The plaintiff exhausted administrative remedies and satisfied the requirements of the Act by filing a complaint with the Commission and awaiting its advice. He is not required to show that the Commission has endeavored to conciliate. To insist that he do so, would require him to pursue an administrative remedy which may be impossible to achieve. If the Commission makes no endeavor to conciliate, the remedy is ineffective and inadequate."

In Moody et al. v. Albemarle Paper Co. et al., 271 F.Supp. 27 (E.D.N.C., July 6, 1967), the court asserted:

"After an aggrieved party has filed a written complaint with the Equal Employment Opportunity Commission and has received notice from the Commission that voluntary compliance within sixty days from receipt of the complaint by the Commission has not been effected, no further formal efforts toward conciliation by the Com- mission are necessary to open the district courts to a private civil action by the complainant against a respondent named in the charge theretofore filed with the Commission. To the extent that *Dent* ' * * * is inconsistent with this ruling, it is disapproved and not followed."

## THE REQUIREMENT THAT A CHARGE BE FILED WITH THE E.E.O.C.

There are three named co-plaintiffs with Anthony Hill in Civil Action No. 67–286. But these plaintiffs, John Martin Oatis, David Johnson, Sr., and R. T. Young, have not filed charges with the Equal Employment Opportunity Commission. Defendants urge that they be dismissed from this suit because of their failure to resort to the E.E.O.C. before coming into court.

The Court agrees with the defendants' contention. 42 U.S.C.A. § 2000e–5(e) clearly states that an aggrieved party may bring suit after having filed a charge with the Commission and receiving the statutory notice from that body. If the creation of the E.E.O.C. has any significance at all, an aggrieved party wishing to obtain relief under Title VII cannot be permitted to completely bypass the Commission. Title VII is entirely constructed around the creation of the E.E.O.C., and a decision that the Commission can be ignored by a person proceeding under this Title would be a complete distortion of the law. Therefore, Oatis, Johnson, and Young cannot be allowed to continue in this suit as co-plaintiffs.

## CAN THE PLAINTIFFS MAINTAIN A CLASS ACTION?

Plaintiffs wish to bring class actions in both cases on behalf of all others similarly situated, into which category, they assert, fall all other Negro employees of the Mill Plant and all Negro applicants for employment at such plant. They contend that their suits fall within the scope of Rule 23(b) (2), Federal Rules of Civil Procedure, and it is spe-

cifically alleged that "[t]he defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole." We agree this is an appropriate class action. However, the main question which arises in connection with the class action issue is whether 42 U.S.C.A. § 2000e–5(e), which requires an aggrieved party to file a charge with the E.E.O.C. before he can bring a civil suit, would be violated if we permitted such a party, once he has filed a charge with the Commission, to maintain a class action on behalf of all his fellow employees and applicants, regardless of whether they also have filed charges with the E.E.O.C. After careful consideration of this problem, the Court has concluded that to permit a class action to be brought on behalf of employees and prospective employees who have not filed charges with the E.E.O.C. would frustrate the requirement of § 2000e–5(e) that a civil suit must be preceded by such a charge. We therefore hold that a class action may be maintained, but it can only cover employees and applicants for employment of the Crown Zellerbach Mill Plant who have filed or will file charges with the Equal Employment Opportunity Commission.

The manner in which the Senate changed the House version of Title VII is evidence that Congress did not intend to permit any individual to bypass the Commission by relying on a charge filed by another employee. In the House Bill 42 U.S.C.A. § 2000e–5(a) [Section 706 (a) of the Act] provided that a charge could be filed with the Commission "by or *on behalf of* an aggrieved person. * * *" (Emphasis added.) But the Senate deleted the words "on behalf of" and thus required each person to charge on his own behalf and prohibited any charging on behalf of a class.

To allow the class to cover employees who have not filed charges would have a number of undesirable effects. First, it would permit circumvention of the administrative remedy provided by Title VII through the Commission in violation of § 2000e–5(e). In addition to allowing circumvention, the recognition of the class plaintiffs seek to represent would directly encourage aggrieved parties to avoid proceeding through the E.E.O.C. By virtue of such a holding, aggrieved persons could escape the necessity of going through the administrative remedies provided by Title VII simply because they happen to be members of the same race or sex and are employed in the same plant as an individual who has followed the procedures required by the law before filing suit. Obviously, this short-cut into the courts would be a great temptation, and many fellow employees of a person who has filed suit after going through the E.E.O.C. will seek to be joined as members of his class if they are members of the same race as the plaintiff who has exhausted his administrative remedies.

Such a holding could open the door to another frustration of a statutory requirement. 42 U.S.C.A. § 2000e–5(d) provides that a person proceeding under § 2000e–5(a) must file his charge with the Commission "within ninety days after the alleged unlawful employment practice occurred * * *." By permitting a class to include all Negroes employed at the same plant as a Negro plaintiff, a court would allow and encourage the revival of any complaints which were barred by § 2000e–5(d). Thus, an employer or labor organization covered by Title VII would be required to undertake the expense and burden of defending against claims which the E.E. O.C. is not permitted to accept because of § 2000e–5(d).

There are other reasons why such a holding would not be appropriate. Of the many Negro employees at the Crown plant, it may be that there are some who would not benefit, who might actually be damaged, by asserting the rights granted by Title VII. We know that Anthony Hill and Pedro Mondy do want to take advantage of the opportunities offered them by Title VII because they have indicated this desire by

filing charges with the E.E.O.C. But we cannot confidently say the same thing about the other hundreds of Negro employees of Crown. The Civil Rights Act of 1964 provides a clear and simple method of determining who wants to proceed under Title VII; all that an aggrieved party has to do is file a charge with the E.E.O.C.

The Court also feels that Title VII's heavy emphasis upon voluntary compliance must be respected. An employer or labor organization should be given every opportunity to conciliate the issues raised. It is possible that Crown Zellerbach might feel more inclined to conciliate in departments of the plant other than the Recovery Room where Hill and Mondy are both employed. It should be noted that Crown did previously voluntarily comply following a number of meetings in 1965 with the Chairman of the Equal Opportunity Commission. As a result of these meetings the segregated lines of progression were` merged by Crown. The charges filed by Hill and Mondy complain that this merger was not enough and that discrimination still exists. But the Court cannot conclude that Crown and the unions will refuse to voluntarily comply with the Commission's suggestions as to departments other than the Recovery Room if it is given the chance to do so, especially in the light of its previous voluntary compliance after the 1965 meetings.

It is relevant to note that Title VII does provide a method by which an entire system of discrimination in a business establishment can be challenged. 42 U.S.C.A. § 2000e–6(a) provides:

"Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing a complaint * * * requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described."

Finally, the Court is aware that it does not yet definitely know which individuals may be included in the class defined above. Therefore, we wish to note that this class is only of a tentative and general nature, and we reserve the right to define it with more precision after the evidence is presented at the trial on the merits.

## A PARTY MUST BE NAMED IN THE CHARGE BEFORE THE E.E.O.C. PRIOR TO THE MAINTENANCE OF A SUIT AGAINST SUCH PARTY

The defendant International Union contends that Pedro Mondy's suit against it in Civil Action No. 66–242 should be dismissed because it has not been charged. In Mondy's charge of discrimination filed with the E.E.O.C. he named Crown Zellerbach Corporation and the Local 189, but he did not charge the International Union.

42 U.S.C.A. § 2000e–5(e) states that a civil suit may "be brought against the respondent named in the charge. * * *" In Mickel v. South Carolina State Employment Service and/or Exide Battery Service, 377 F.2d 239 (4th Cir., 1967), the court held that a party who had not been named in the charge filed with the Commission could not be made a defendant in a suit brought under Title VII

Local 189 and the International Union cannot be treated as the same legal entity. The acts of the Local cannot be automatically attributed to the International merely because of the affiliation between the two. See Sperry v. Operating Engineers, 43 LRRM 2167 (W.D.Mo., 1958). Therefore, the International cannot be sued merely because

the Local has been charged. In Moody et al. v. Albemarle Paper Co. et al., supra, the court was faced with a situation identical to that in the *Pedro Mondy* case. The plaintiff had named the Local in the charge filed with the E.E.O.C. but sued both the Local and the International unions. The court dismissed the suit as against the International and said:

"Whether this be treated as a question of subject matter jurisdiction or personal jurisdiction, the requirement that all defendants be named in the charge filed with the Commission goes to the competence of a district court to entertain the action in respect to the party in question (international union), as defined in the clear language of the statute. Mickel v. South Carolina State Employment Service. * * * The contention that the local union is the agent of the international union is without merit, the records indicating that the local is merely affiliated with the international and enjoys an autonomous existence. This is insufficient to establish responsibility of the international for any alleged unlawful conduct on the part of the local."

We are in full agreement with this aspect of the *Moody* case and accordingly hold that the United Papermakers and Paperworkers International Union AFL-CIO should be dismissed from the *Pedro Mondy* suit.

## ORDER

In the Hill et al. v. Crown Zellerbach Corporation, et al. Civil Action 67–286 for the reasons contained in the opinion issued herewith,

IT IS ORDERED that the motions to dismiss, or in the alternative, for a summary judgment filed by and on behalf of the defendants Crown Zellerbach Corporation, the United Papermakers and Paperworkers, International Union AFL-CIO, and Local 189 of United Papermakers and Paperworkers AFL-CIO are denied, except that said motions are granted to the extent that the complaint of plaintiffs John Martin Oatis, David Johnson, Sr. and R. T. Young is hereby dismissed;

In Mondy v. Crown Zellerbach Corporation, et al., Civil Action 66–242 for the reasons contained in the opinion issued herewith;

It is ordered that the motion to dismiss filed by the defendant Crown Zellerbach Corporation is hereby denied;

It is further ordered that the motion to dismiss filed by the United Papermakers and Paperworkers International Union, AFL-CIO is hereby granted.

It is further and finally ordered that both Civil Action 66–242 and Civil Action 67–286 are determined to be class actions under Rule 23(b) (2), F.R.C.P., to the extent set out in the opinion issued herewith.