James P. MILLER et al., Appellants,

v.

INTERNATIONAL PAPER COMPANY
et al., Appellees.

No. 25616.

United States Court of Appeals
Fifth Circuit.

Feb. 26, 1969.

Marian E. Wright, Jackson, Miss., Jack Greenberg, Gabrielle A. Kirk, New York City, James M. Nabrit, III, Robert Belton, New York City, Reuben V. Anderson, Paul A. Brest, Iris Brest, Jackson, Miss., for appellants; Albert J. Rosenthal, New York City, of counsel.

Dixon L. Pyles, Jackson, Miss., Robert F. Adams, Mobile, Ala., C. W. Ford, Pascagoula, Miss., Warren Woods, McInnis, Wilson, Munson & Woods, Washington, D. C., Benjamin Wyle, New York City, Louis Sherman, Sherman & Dunn, Washington, D. C., Pyles & Tucker, Jackson, Miss., for appellee, International Paper Co.; Johnstone, Adams, May, Howard & Hill, Mobile, Ala., Ford, Moore, Jones, Colmer & Schroeder, Pascagoula, Miss., of counsel.

Julia P. Cooper, Daniel Steiner, Gen. Counsel, Equal Employment Opportunity Commission, Washington, D. C., amicus curiae.

Before GEWIN and BELL, Circuit Judges, and BOOTLE, District Judge.

GEWIN, Circuit Judge:

The appellants in this case are five Negroes who are employed by the appellee International Paper Company. They brought suit in the District Court for the Northern District of Mississippi on behalf of themselves and others similarly situated against the company, four local unions and three international unions,[1] alleging racial discimination in violation of Title VII of the Civil Rights Act of 1964.[2] The district court entered summary judgment for the defendants-appellees on the grounds (1) that a class action could not be maintained on behalf of persons who have not filed charges with the Equal Employment Opportunity Commission and (2) that the suit had not been filed within the time permitted by the statute.[3] In addition, the district court assessed a penalty against the appellants in the amount of costs and the company's attorney's fees for failure of the appellants to appear on a certain day for the taking of depositions. We have determined that the summary judgment was erroneously granted and that the assessment of the penalty against the appellants was an abuse of discretion; accordingly, we reverse the judgment of the district court.

I

After having made vociferous and vigorous contentions in their briefs supporting the district court's class-action holding, the appellees conceded during oral argument that their position is now untenable under the holding in Oatis v. Crown Zellerbach Corp.,[4] decided by this court subsequent to the decision below. We held in Oatis that membership in the class cannot be restricted to individuals who have filed charges with the EEOC prior to the institution of suit.[5] The

---

1. The three international unions did not enter an appearance in the district court and are not represented before this court. The local unions state in their brief that they are not agents of the international unions for the purpose of service of process and that the locals are autonomous labor organizations.

2. 42 U.S.C. §§ 2000e–2000e–15 (1964).

3. Miller v. International Paper Co., 290 F.Supp. 401 (S.D.Miss.1967).

4. 398 F.2d 496 (5th Cir. 1968).

5. The court in Oatis indicated that a Title VII class action is subject to two basic limitations:

   First, the class action must * * * meet the requirements of Rule 23(a) and (b) (2). Next, the issues that may be raised by plaintiff in such a class action are those issues that he has standing to raise (i. e., the issues as to which he is aggrieved, see § 706

district court here was apparently of the view that, since the filing of a charge with the EEOC is a jurisdictional prerequisite to filing suit, those individuals who had not filed charges with the EEOC could not be included in a class of persons who could properly file suit. Substantively, the district court's syllogism is inviolable. This court was quite clear in the *Oatis* case [6] and in Jenkins v. United Gas Corp.[7] that a complainant under Title VII cannot bypass the EEOC. The effect of a contrary holding would be virtually to eliminate the commission established by Congress to encourage fair employment practices.[8] The fallacy of the district court's reasoning is that the matter is primarily procedural rather than substantive and thus the question is one of simple expediency. In this posture, it is perfectly clear that no procedural purpose could be served by requiring scores of substantially identical grievances to be processed through the EEOC when a single charge would be sufficient to effectuate both the letter and the spirit of Title VII.

## II

The district court held that, under section 706(e) of the Act, a charging party has sixty days after filing his charge with the EEOC to bring suit and, if he fails, "the action and the right of action no longer exist, and the defendant is exempt from liability." [9] The pertinent part of section 706(e) provides:

If within thirty days after a charge is filed with the Commission * * * (except that * * * such period may be extended to not more than sixty days upon a determination by the Commission that further efforts to secure voluntary compliance are warranted), the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge * * *.[10]

The appellants brought this suit in the district court some five and a half months after filing their charges with the EEOC. However, the suit was filed within thirty days after the EEOC notified the appellants that voluntary compliance had not been achieved.

Since by the explicit terms of section 706(e) the EEOC has up to sixty days to attempt conciliation, the limitation period applicable to the complainant could in no event be sixty days after the filing of charges with the EEOC. By stacking the thirty-day post-notice period on top of the sixty-day conciliation period it would not be completely unreasonable to argue that the applicable limitation period is ninety days from the filing of the charges. But even that construction is untenable. Suppose, for example, a party files a charge with the EEOC and the latter, after holding the charge for exactly sixty days, mails notice of failure to effect voluntary compliance; the charging party receives the notice two days after mailing and then on the thirtieth day thereafter files suit in the district court. Here, every term of the statutory provision has been complied with and yet, if the aggregated periods fixed the time

(a) * * *), and that he has raised in the charge filed with the EEOC pursuant to § 706(a).
398 F.2d at 499. See Jenkins v. United Gas Corp., 400 F.2d 28, 33–35 (5th Cir. 1968).

6. 398 F.2d at 497–98.

7. 400 F.2d 28, 30 (5th Cir. 1968).

8. See Mickel v. South Carolina State Employment Serv., 377 F.2d 239, 241 (4th Cir.), cert. denied, 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967); Stebbins v. Nationwide Mut. Ins. Co., 382 F.2d 267, 268 (4th Cir. 1967), cert. denied, 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968); Cox v. United States Gypsum Co., 284 F.Supp. 74, 76 (N.D.Ind. 1968); EEOC General Counsel's Opinion, October 7, 1965, CCH Employ.Prac. Guide ¶ 17,251.083; Gardner, The Procedural Steps of Title VII of Civil Rights Act of 1964, 29 Ala.Law, 80, 94 (1968).

9. 290 F.Supp. 401, 403 n. 1 (S.D.Miss. 1967).

10. 42 U.S. § 2000e–5(e) (1964).

within which suit must be filed, the charging party would be two days too late. This logical discrepancy is a clear portent that the two time periods provided in section 706(e) were not intended to apply as an aggregation.[11]

We do not quarrel with the appellee-company's contention that, "[w]here rights asserted in a court are statutory in nature, compliance with the statute is a prerequisite to the commencement of a civil action based thereon." However, the difficulty with the proposition is that it assumes the answer to the question before the court. The issue is whether section 706(e) requires the charging parties to bring an action in the district court within a fixed period of time after filing their charges with the EEOC. On this issue, the company has made no enlightening observations but has merely extolled the limpid precision of a statute which we find to a large extent ambiguous.

The confusion concerning the time limitations seems to stem from the inclusion in section 706(e) of both a time limitation on the conciliation efforts of the EEOC and a time limitation on the charging party's right to file suit. The provision states that the EEOC has thirty days, or sixty days if needed, to attempt conciliation by informal means.

It also provides that the charging party has thirty days within which to file suit after receiving notice from the EEOC that voluntary compliance has not been achieved.[12]

Considering the genesis of Title VII, the difficulties inherent in section 706(e) are hardly surprising. The distant ancestor of the title was H.R. 405 which would have established a fair employment practices commission with both investigatory and enforcement powers. H.R. 405 was included as an amendment and substitute in H.R. 7152 by Subcommittee No. 4 of the House Judiciary Committee. When the latter bill reached the full committee, the proposed EEOC's enforcement powers were stripped away but, in return, it was given the power to institute civil actions on behalf of the charging party against the alleged discriminator. After passage in the House, H.R. 7152 was sent to the Senate where, by the Mansfield-Dirksen amendments, the power to bring suit was taken from the EEOC and lodged exclusively in the charging party.[13]

Section 707(b) of H.R. 7152, as drawn when it reached the Senate, gave the EEOC ninety days after receiving the charging party's complaint to file suit. However, the aggrieved party was not completely at the mercy of the EEOC

11. See International Brotherhood of Electrical Workers, Local Union No. 5 v. United States, 398 F.2d 248, 261 n. 6 (3rd Cir. 1968).

12. As the Seventh Circuit has observed, one missing link in the temporal chain is how long the EEOC has to serve notice after the lapse of the conciliation period. Choate v. Caterpillar Tractor Co., 402 F.2d 357, 361 (7th Cir. 1968). The EEOC originally took the position that the notice must be sent "within a reasonable time after the expiration of the statutory period, or after an earlier disposition of the charge." EEOC General Counsel's Opinion, October 25, 1965, CCH Employ.Prac.Guide ¶ 17,252.32. However, the EEOC's regulations now indicate that notice will not be served prior to the processing of the charge unless the charging party demands notice. 29 C.F.R. § 1601.25a(b) (1966). In this same vein, a number of district court

decisions have held that the limitation period on conciliation is directory rather than mandatory. See e. g., Kendrick v. American Bakery Co., 58 Lab.Cas. ¶ 9146 (N.D.Ga.1968); Pullen v. Otis Elevator Co., 292 F.Supp. 715 (N.D.Ga.1968); Harris v. Orkin Extermination Co., 293 F.Supp. 104 (N.D.Ga.1968); Dent v. St. Louis-San Francisco Ry., 265 F. Supp. 56, 58 (N.D.Ala.1967), rev'd. on other grounds, 406 F.2d 399 (5th Cir. 1969). Since this limitation period does not affect the rights and duties of the charging party, we find no occasion in this case to express an opinion on this matter.

13. See Vaas, Title VII: Legislative History, 7 B.C.Ind. & Com.L.Rev. 431 (1966). Mr. Vaas gives an excellent delineation of Title VII's torrid conception, its turbulent gestation, and its frenzied birth, which he aptly described as "an epic legislative struggle."

because, under section 707(e), he could bring the suit himself if even one member of the EEOC gave his permission.[14] Thus, up to this point in the legislative process, the limitation period applicable to investigation and enforcement was clear and uncomplicated. A serious wrinkle appeared in the legislative fabric, however, when the right to bring suit was vested exclusively in the charging party. The drafters of the bill appear simply to have allocated the first sixty days of the original ninety-day limitation period to the EEOC's conciliation efforts and the last thirty days to the grievant's right to file suit, without any consideration of the relationship between the two separate periods. Our problem here, therefore, is what John Chipman Gray would probably regard as a typical instance of statutory construction:

> The fact is that the difficulties of so-called interpretation arise when the legislature has had no meaning at all; when the question which is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present

to its mind, if the point had been present.[15]

Section 706(e) of the Act provides that notice of failure to conciliate shall be sent by the EEOC and "within thirty days thereafter" the aggrieved person may file suit. It is clear from this provision that the limitation period applicable to the charging party does not begin to run until notice of the failure to obtain voluntary compliance has been sent and received. Thus the question is whether the EEOC, by its failure to observe the limitation period applicable to it—if, indeed, it did fail [16]—can abrogate an aggrieved person's right to a judicial determination of his charge. Considering the incongruity inherent in aggregating the two periods set forth in section 706(e) and the harsh effect an affirmative answer would have on aggrieved persons, it is hardly surprising that all but one of the decisions on point have answered the question in the negative.[17] We hold that the thirty-day limitation period applicable to charging parties under section 706(e) does not begin to run until notice of the failure to achieve voluntary compliance has been sent by the EEOC and received by the aggrieved person.[18]

14. H.R.Rep. No. 914, 88th Cong., 1st Sess. (1963), 2 U.S.Code Cong. & Ad.News 2391, 2404–05 (1964).

15. Gray, The Nature and Sources of the Law § 370, at 165 (1948).

16. Again, we express no opinion on the question whether the EEOC did in fact exceed the limitation period applicable to it. See note 12 *supra*. The decision of that issue must await the presentation of a factual setting which places it in a brighter focus and a clearer perspective than the present case.

17. Choate v. Caterpillar Tractor Co., 402 F.2d 357, 361 (7th Cir. 1968); Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258, 261 (E.D.La.1967), rev'd on other grounds sub nom. Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968); Dent v. St. Louis-San Francisco Ry., 265 F.Supp. 56, 58 (N.D.Ala.1967), rev'd on other grounds, 406 F.2d 399; Ward v. Firestone Tire & Rubber Co.,

260 F.Supp. 579, 580 (W.D.Tenn.1966); Kendrick v. American Bakery Co., 58 Lab. Cas. ¶ 9146 (N.D.Ga.1968); Pullen v. Otis Elevator Co., 292 F.Supp. 715 (N.D. Ga.1968); Harris v. Orkin Exterminating Co., 293 F.Supp. 104 (N.D.Ga.1968). Contra Cunningham v. Litton Indus., 56 Lab.Cas. ¶ 9078 (C.D.Calif.1967).

18. The EEOC has adopted this view of section 706(e). EEOC General Counsel's Opinion, October 25, 1965, CCH Employ.Prac.Guide ¶ 17,252.32 (1966). As the administrative body charged with investigation and negotiation of rights under Title VII, its construction of the statute must be given considerable weight. See Udall v. Tallman, 380 U.S. 1, 15, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Skidmore v. Swift & Co., 323 U.S. 134, 139–140, 65 S.Ct. 161, 89 L.Ed. 124 (1944); Cox v. United States Gypsum Co., 284 F.Supp. 74, 78 (N.D.Ind. 1968); 1 Davis Administrative Law Treatise § 5.06 (1958).

### III

█ Perhaps suspecting the infirmity of the ground adopted by the district court for granting summary judgment, the appellees have zealously asserted another basis for upholding the disposition below.[19] They argue that the EEOC did not attempt to conciliate their differences with the appellants and, for that reason, the appellants should be prohibited from bringing this suit. The argument appears to be that performance of the duty imposed upon the EEOC by section 706(a) to "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion" is a condition precedent to the charging party's right under section 706(e) to seek a judicial determination of his Title VII rights.[20]

The record before this court does not indicate what, if anything, the EEOC did toward conciliating the appellants' grievances. However, the EEOC does state in its letters of notice to the appellants that "the Commission has not made a determination as to whether or not there is reasonable cause to believe your charge is valid."[21] Moreover, the appellants concede in their brief—insofar as they are aware anyway—that the EEOC made no effort to conciliate the grievances.[22] In any event, since it is clear that this

---

We should point out that there is no intimation in our holding that the EEOC could defeat an aggrieved person's right to sue by refusing to issue the required notice. In the event of an outright refusal, the grievant could file suit within a reasonable time after the lapse of the conciliation period. The EEOC's regulations are not inconsistent with this view. *See* 29 C.F.R. § 1601.25a(b) (1966).

19. The appellee-unions make this argument to some extent but, as indicated in Part IV of this opinion, the main burden of their argument is much broader.

20. The relevant part of section 706(e) of the Act is quoted in the text of this opinion at note 10 *supra.* Section 706 (a) provides in pertinent parts:

Whenever it is charged in writing under oath by a person claiming to be aggrieved * * * that an employer * * * or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer * * * or labor organization with a copy of such charge and shall make an investigation of such charge. * * * If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. 42 U.S.C. § 2000e–5(a) (1964).

21. The letters from the EEOC to each of the appellants stated:

This is to advise you that more than sixty (60) days have elapsed since the filing of your charge in the above case. Although the Commission has not made a determination as to whether or not there is reasonable cause to believe your charge is valid, your counsel, the Legal Defense and Educational Fund of the NAACP, has demanded, pursuant to the Commission's Rules 29 C.F.R., Section 1601.25a, that this statutory notice issue.

Therefore, pursuant to Section 706 (e) of the Act, you are hereby notified that you may, within thirty (30) days of receipt of this letter, institute civil action in the appropriate Federal District Court. If you are unable to retain an attorney the Federal District Court is authorized, in its discretion, to appoint an attorney to represent you and to authorize the commencement of suit without payment of fees, costs or security.

If you decide to institute suit and find you need such assistance, you may take this letter to the Clerk of the Federal District Court nearest to the place where the alleged discrimination occurred and request that a Federal District Judge appoint counsel to represent you.

The Commission will continue to process your case. You should be aware however, that failure to institute suit within this 30-day period may cause you to lose your right to seek judicial relief against the Respondent.

Please feel free to contact the Commission if you have further questions on this matter.

22. The reason given by the EEOC for its failure to attempt conciliation is that it was not staffed and financed sufficiently to cope with the volume of complaints which it has received. This

issue will arise upon the remand of the case, efficiency in the administration of justice requires that we consider this question.

The main thrust of the company's argument is that "the legislative history of Section 706 clearly establishes that conciliation efforts were intended to be, and are, a prerequisite to a civil action under the statute as enacted." [23] Although a deluge of cases has already considered and rejected the company's argument,[24] the company's position was supported when this case was heard by the careful opinion in Dent v. St. Louis-San Francisco Ry.[25] However, subsequent to the oral argument, this court reversed the district court in Dent and decided this issue adversely to the appellees.[26] The following discussion of this question is entirely consistent with our Dent decision and is intended merely as an elaboration of the court's rationale.

The first element of Title VII's legislative history which the company finds "overwhelmingly" in its favor is the amendment to H.R. 405 introduced by Representative Celler to "make it clear that an attempt would have to be made to conciliate * * * before an action could be brought in the district court." [27] However, as the Fourth Circuit observed in Johnson v. Seaboard Coast Line R.R.,[28] the Celler amendment applied to a statutory scheme much different from that of Title VII. Under H.R. 405 the charging party would only have had to file his complaint with the EEOC, which would then investigate, conciliate, and enforce. Obviously, under that scheme, it would be expectable to find a provision requiring the EEOC to perform its duty to seek voluntary compliance before exercising its enforcement powers. Such a provision would be a necessary precaution to ensure that the EEOC did not shirk its responsibility. Additionally, such a provision would be demanded by the important policy implicit in H.R. 405 of delimiting the burden of the federal courts in employment discrimination cases. As Title VII is presently structured, that policy is far less significant because the courts are now the exclusive source of enforcement power.[29] The role of the

reason is supported by facts. See EEOC, First Annual Report 5 (1967); Rosen, Book Review, 81 Harv.L.Rev. 276, 282 (1967).

23. The unions take a position inconsistent with the company on the clarity of the legislative history. After quoting various legislative statements, they conclude—as we have—that the congressional remarks which are relevant are so conflicting and contradictory that they are useless in construing the statute. The unions cite Stringham, Crystal Gazing: Legislative History in Action, 47 A.B.A.J. 466, 469–70 (1961), for some very pertinent and incisive discussion of legislative history.

24. See e. g., Johnson v. Seaboard Coast Line R. R., 405 F.2d 645 (4th Cir. 1968); Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968), rev'g 274 F.Supp. 776 (S.D.Ill., 1967); Sokolowski v. Swift & Co., 286 F.Supp. 775 (D.Minn.1968); Reese v. Atlantic Steel Co., 282 F.Supp. 905 (N.D.Ga. 1967); Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258 (E.D.La.1967), rev'd on other grounds sub nom. Oatis v. Crown Zellerbach Corp., 398 F.2d 496

(5th Cir. 1968); Moody v. Albemarle Paper Co., 271 F.Supp. 27 (E.D.N.C. 1967); Evenson v. Northwest Airlines, Inc., 268 F.Supp. 29 (E.D.Va.1967); Bowe v. Colgate-Palmolive Co., 272 F. Supp. 332 (S.D.Ind.1967); Wheeler v. Bohn Aluminum & Brass Co., 68 Lab.Cas. ¶ 9137 (W.D.Mich.1968); Pena v. Hunt Tool Co., 296 F.Supp. 1003 (S.D.Tex. 1968).

25. 265 F.Supp. 56 (N.D.Ala.1967). Cf. also Blue Bell Boots, Inc. v. EEOC, 295 F.Supp. 1060 (M.D.Tenn.1968).

26. Dent v. St. Louis-San Francisco Ry., 406 F.2d 399 (5th Cir. 1969).

27. 110 Cong.Rec. 2566 (1964) (remarks of Rep. Celler).

28. 405 F.2d 645 (4th Cir. 1968).

29. H.R.Rep. No. 914, 88th Cong., 1st Sess. (1963) (Additional Views on H.R. 7152), 2 U.S.Code Cong. & Ad.News 2391, 2515 (1964):

A substantial number of committee members * * * preferred that the ultimate determination of discrimination rest with the Federal judiciary. Through this requirement, we believe

EEOC is much narrower under the present scheme of Title VII than it was under H.R. 405 as originally drafted.[30]

The legislative remarks which the company finds comforting are of two patterns: they either extol the importance of conciliation or they ambiguously state the procedural chronology, i. e., that judicial enforcement follows conciliation.[31] We certainly take no exception to these opinions. However, they are not particularly helpful or pertinent to the issue under consideration. Granting that conciliation is important and that it precedes court action, the question is, what effect should the EEOC's failure to conciliate have upon the charging party's right to file suit? The appellees assume a crushing burden when they attempt to convince this court that the value of conciliation should supersede the value of enforcement. The means devised cannot be more important than the end envisioned. We do not believe that the procedures of Title VII were intended to serve as a stumbling block to the accomplishment of the statutory objective. We agree with the view expressed by Judge Butzner in Quarles v. Philip Morris, Inc.:

> The plaintiff is not responsible for the acts or omissions of the Commission. He, and the members of his class, should not be denied judicial re-

lief because of circumstances over which they have no control. The plaintiff exhausted administrative remedies and satisfied the requirements of the Act by filing a complaint with the Commission and awaiting its advice. He is not required to show that the Commission has endeavored to conciliate. To insist that he do so, would require him to pursue an administrative remedy which may be impossible to achieve. If the Commission makes no endeavor to conciliate, the remedy is ineffective and inadequate.[32]

We have been shown no convincing reason for crippling the right of charging parties as the appellees urge. The statutory language certainly does not compel such a construction. The appellees would have us hold that the vastness of the problem has stifled the solution devised by Congress. The essence of their position is that, even if the EEOC is overburdened and cannot actively seek voluntary compliance, their right to be importuned and cajoled cannot be infringed by the charging party's right to judicial relief. This obviously misconceives the scheme of the statute. There is no provision in Title VII permitting discrimination until cajolery is duly and fully performed. The real burden of the statute is not upon the EEOC but upon the discriminator. Conciliation is not a

that settlement of complaints will occur more rapidly and with greater frequency.

This statement was, of course, made prior to the elimination of the EEOC's right to bring suit on behalf of the grievant.

30. It is interesting to note that scholarly opinion is divided over the efficacy and adequacy of Title VII's present enforcement structure. Compare Morse, The Scope of Judicial Relief Under Title VII of the Civil Rights Act of 1964, 46 Tex. L.Rev. 516 (1968) and Comment, Enforcement of Fair Employment Under the Civil Rights Act of 1964, 32 U.Chi.L. Rev. 430 (1965) with Rachlin, Title VII: Limitations and Qualifications, 7 B.C. Ind. & Com.L.Rev. 473 (1966) and Note, Tort Remedies for Employment Discrimination Under Title VII, 54 Va.L.Rev. 491 (1968).

31. See, e. g., 110 Cong.Rec. 12723 (1964) (remarks of Sen. Humphrey); 10 Cong. Rec. 13089 (1964) (remarks of Sen. Javits); 110 Cong.Rec. 14258 (1964) (remarks of Sen. Saltonstall); 110 Cong. Rec. 14190 (1964) (remarks of Sen. Morse); 110 Cong.Rec. 12617 (1964) (remarks of Sen. Muskie). For obvious reasons the company does not cite the conflicting remarks of Senators Ervin, Javits, and Humphrey. 110 Cong.Rec. 14188, 14199 (1964). See Johnson v. Seaboard Coast Line R. R., 405 F.2d 645 (4th Cir. 1968); Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258, 262–263 (E.D.La.1967), rev'd on other grounds sub nom. Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968).

32. 271 F.Supp. 842, 846–847 (E.D.Va. 1967).

one-way street but entails the active participation of the alleged discriminator as well as the EEOC. The primary benefits ensuing from successful conciliation go to the charged and charging parties; the EEOC benefits only insofar as it represents the public interest. Thus it behooves an employer or union to make affirmative and good faith efforts to settle alleged grievances out of court.[33]

For whatever reason, if voluntary compliance is not achieved within sixty days after the charging party files his complaint with the EEOC, his right to be notified of the failure vests and, upon receipt of notice, he may file suit in the district court. The action or inaction of the EEOC cannot affect the grievant's substantive rights under the statute. We reiterate the holding in *Dent* that an effort to conciliate by the EEOC is not in any sense a condition precedent to the charging party's right to seek judicial consideration of his grievance.

### IV

■■ The unions advance two additional grounds for upholding the district court's grant of summary judgment as to them. First, they contend that the court lacked jurisdiction of the case because they were not named in the charges which the appellants filed with the EEOC. This circuit has already made clear—and we have reiterated in this opinion [34]—that charging parties cannot bypass the EEOC. Therefore, if charges of employment discrimination have not been filed against the unions, the appellants' right to file suit against the unions has not ripened. Assuming the presence of these facts, the district court's grant of summary judgment would be correct as to the unions. However, we are unable to determine on the record now before us whether or not the unions were named in the EEOC charges. The appellants insist that the unions were named and point to a copy of a charge included in the record [35] which clearly alleges employment discrimination against both the company and the unions. But it is obvious that the copy in the record cannot be the charge alleged in the complaint filed in the district court. The complaint alleges that four of the appellants—Miller, Stallworth, Watson, and Cannon—filed charges with the EEOC on December 12, 1966, and that one of the appellants, Smith, filed his charge on December 28, 1966. However, the copy of the charge in the record includes all five named appellants. Since the copy is neither signed nor dated and is in conflict with the description in the complaint, we decline to accept it as proof of the facts urged. Therefore, this matter must be decided by the district court upon remand.

The unions' second contention is that, even assuming that they were named in the EEOC charge, they were never served with a copy of the charge and, therefore, cannot be sued. This argument has much in common with the conciliation-prerequisite theory previously considered. Nevertheless, we have decided not to consider this question for two reasons. First, the record before us is barren of any indication whether the unions were served with a charge. And second, the question may not arise upon remand of the case. If the unions have not been charged before the EEOC, the district court will dismiss the complaint as to them. Alternatively, the appellants may have been able to "cure" the defect here challenged. It takes only sixty days to process a charge through the EEOC. Therefore, since the district court's judgment was entered more than a year ago, the appellants have had ample time to

---

33. See Gardner, The Procedural Steps of Title VII of the Civil Rights Act of 1964, 29 Ala.Law. 80, 85 (1968).

34. See text accompanying notes 6–8 *supra.*

35. The copy of the charge in the record was apparently included in response to

the appellants' motion to supplement the record under civil rule 75(d). It nowhere appears in the record that this motion was granted but, in the circumstances of this case, we attach no importance to that omission.

proceed through the EEOC and file a new complaint as to all charges not barred by the statutory limitation period.[36] Accordingly, we reserve decision of this issue until it is presented in a proper context.

## V

■ Shortly after the institution of suit in this case, the appellee unions gave the appellants notice of the taking of their depositions "beginning on Wednesday, July 5, 1967 * * *, and continuing thereafter from day to day as the deposition may be adjourned and until the deposition of each of said Plaintiffs named herein shall have been completed . . . ." The company neither gave notice nor joined in the notice filed by the unions. The appellants appeared for deposition on Wednesday, Thursday, and Friday but refused to appear on Saturday. They were ready and willing to continue the depositions as late as convenient to the appellees and to return the following Monday but, apparently because of the unavailability of the chosen court reporter for the ensuing three weeks, the appellees were unwilling to resume the depositions on Monday.[37] When the appellants failed to appear on Saturday, counsel for both the company and the unions promptly filed motions under rule 37(d) of the Federal Rules of Civil Procedure [38] to dismiss the action, the company's motion also seeking an assessment of "costs, expenses and attorney's fees" against the appellants. At the end of its brief opinion, the district court responded to the motions under rule 37(d), stating:

The plaintiffs will be assessed with all costs, including a reasonable attorney's

---

36. 42 U.S.C. § 2000e–5(d) (1964).

37. The following is part of the colloquy between counsel for the appellants and counsel for the unions:

BY MRS. BREST:
As stated already in the record, plaintiff will not be able to be here tomorrow, Saturday, July 8th, and request that this deposition be adjourned until some other date.

BY MR. PYLES:
I think the record should show that I would like very much to accommodate counsel in here but we have already accommodated counsel and I have found that accommodating counsel does not pay off very well and I am going to announce and insist to everybody that I will be here in the morning at 9:00 A.M. to continue the taking of these depositions and I assure you that if I and the Court Reporter are the only ones here, I shall ask the plaintiffs to show cause. I intend to put the witnesses on the stand and examine them.

BY MRS. BREST:
May the record show the plaintiffs are willing to proceed after the weekend if another time can be arranged but it is our understanding that the court reporter is unable to continue for three weeks. We are willing to proceed with another reporter if that is considered desirable by the other parties but we have no objection to recessing for three weeks until another convenient time is found. I would like for the record to show that the only thing that has happened so far is the examination of one plaintiff, whereas depositions were noticed for all five plaintiffs—that counsels for the defendant company have not examined the witness nor have plaintiffs examined the witness and there does not seem to be any reason to believe that any significant part of this could be accomplished on Saturday, which is tomorrow and I am going to direct the witnesses not to be here in the morning as they will not be represented by counsel.

BY MR. PYLES:
You are directing all witnesses, including Mr. Miller, not to be here in the morning?

BY MRS BREST:
Yes, Mr. Pyles.

BY MR. PYLES:
Very Well. I warn you, you do so at your own peril.

38. Fed.R.Civ.P. 37(d) provides in pertinent part:
If a party or an officer or managing agent of a party wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, * * * the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party.

fee to International in the amount of two hundred fifty dollars for failure of parties to appear at hearing [for depositions] on July 8, 1967, plus all depositions cost and expense under Rule 37.[39]

In support of this penalty assessment, the company argues that, since the appellants deliberately failed to heed the deposition notice, the assessment of costs and attorney's fees was well within the broad discretion of the district court. We heartily agree that the discretion of the trial court must be broad if it is to direct the course of the proceedings before it. But as we stated in B. F. Goodrich Tire Co. v. Lyster, "[a]lthough a trial judge's latitude in framing orders and in penalizing failures to comply is broad, his discretion is not limitless." [40] This court will not uphold the imposition of an unjustified penalty. The rules of civil procedure are designed to impose order upon complex and often chaotic judicial proceedings. The power which makes the rules work emanates from the district judge who, like a ringmaster, must occasionally use the prod. Excessive or fruitless use of the prod, however, is impermissible.

In the circumstances of this case, we think the district court abused its discretion when it imposed cost and fee penalties upon the appellants. The unions' notice did not necessarily require the taking of depositions on Saturday. The notice stated that depositions were to be taken "from day to day" until completed, which obviously could not and would not be enforced literally. Although many lawyers do work on Saturdays—and Sundays too for that matter—the ordinary business of the law takes place during the

week-days. It was perfectly reasonable for the appellants' counsel to expect that weekends would not be included within the phrase "from day to day." Counsel for the parties should have discussed the matter of weekend depositions maturely and reached an amicable agreement based upon mutual convenience.

We reject the company's contention that the appellants should have sought a protective order from the district court. If the unions' notice had stated that depositions were to be taken on the weekend, the burden may well have been upon the appellants to seek protection. But it is not encumbent upon a party to attempt to obtain an eleventh-hour order protecting himself against an unreasonable construction of the terms of the notice. The controlling understanding between the parties is the deposition notice and the controlling consideration is expediency. The whim of counsel and the strategy of obstruction have no recognized place in federal procedure.

Being without justification, the imposition of a penalty upon the unaffluent appellants not only would cause undue hardship but it would also tend to undermine the policy of financially assisting complainants in Title VII suits. As already indicated, when the power of the EEOC to enforce Title VII by court action was struck from H.R. 7152, a new provision was added placing that power in the hands of the individual charging party.[41] To assist the charging party in the performance of what is, in effect, both a public and private service, section 706(e) provides for the appointment of an attorney and for the privilege of proceeding without payment of fees, cost or security in a proper case.[42] Moreover,

---

39. 290 F.Supp. 401, 403 (S.D.Miss.1967). Apparently the reason for not assessing attorney's fees in favor of the unions was that they had not sought such fees in their motion.

40. 328 F.2d 411, 415 (5th Cir. 1964). *See* Bon Air Hotel, Inc. v. Time, Inc., 376 F.2d 118, 121–122 (5th Cir. 1967).

41. See text accompanying note 13 *supra*.

42. See Vaas, Title VII: Legislative History, 7 B.C.Ind. & Com.L.Rev. 431, 453–54 (1966).

section 706(k) provides for an award of attorney's fees to the prevailing party as an added inducement to voluntary compliance out of court.[43] In the present case, since we have determined that the appellees were not entitled to summary judgment, the award of attorney's fees against the charging parties reverses the clear policy of the Act. The penalty assessment, therefore, cannot stand.

## VI

In conclusion, it may be observed that on the surface the present case concerns only the meaning of certain statutory provisions. But beneath the legal facade a faint hope is discernible rising like a distant star over a swamp of uncertainty and perhaps of despair. Those who love their work may sometimes forget that a successful human community requires the performance of many vapid and colorless tasks. Even the most tedious physical labor is endurable and in a sense enjoyable, however, when the laborer knows that his work will be appreciated and his progress rewarded. "Work without hope," said Coleridge, "draws nectar in a sieve, And hope without an object cannot live." The ethic which permeates the American dream is that a person may advance as far as his talents and his merit will carry him.[44] And it is unthinkable that a citizen of this great country should be relegated to unremitting toil with never a glimmer of light in the midnight of it all.

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

43. For an excellent discussion of the provision for attorney's fees, see Walker, Title VII: Complaint and Enforcement Procedures and Relief and Remedies, 7 B.C.Ind. & Com.L.Rev. 495, 501–06 (1966).

44. See Sovern, Legal Restraints on Racial Discrimination in Employment 212

(1966). One reviewer of Professor Sovern's excellent and scholarly book suggests that the principle of individual merit excludes consideration of non-merit factors. Rosen, Book Review, 81 Harv. L.Rev. 276, 278 (1967). This criticism is obviously unfounded; recognition of merit is simply the first level of basic social justice.